Hillsborough-southern judicial district
No. 98-652

MILFORD LUMBER COMPANY, INC.

v.

RCB REALTY, INC. & a.

September 28, 2001

16

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*Donald C. Crandlemire* on the brief and orally), for the plaintiff.

*Law Office of William E. Aivalikles, P.A.*, of Nashua (*William E. Aivalikles* on the brief and orally), for the defendants.

NADEAU, J. The defendants, RCB Realty, Inc., Century 21 Team Berube, and Richard Berube, appeal the ruling of the Superior Court (*Dalianis*, J.) awarding judgment to the plaintiff, Milford Lumber, Inc., under RSA chapter 358-A (1995 & Supp. 2000). We affirm.

The relevant facts follow. The defendants were involved in a joint venture along with John Howe in the construction business, and developed the Windsor Heights property in Londonderry. After being approached by Howe, the plaintiff agreed to supply building materials to the defendants, and began doing so in November 1995. At that time, the plaintiff billed the defendants through an account Howe had established for his business, Welcome Home.

By the summer months of 1996, while the plaintiff continued supplying lumber, invoices for the products were going unpaid. When the plaintiff telephoned Berube to discuss the payment schedule, Berube indicated that there was a communication problem between Howe and Berube regarding the invoices. It was agreed the invoices would thereafter be sent directly to Berube. The invoices, however, remained in the Welcome Home account.

The plaintiff's problems receiving payment did not abate, despite repeated efforts to communicate with both Berube and his wife, Leslie. Whenever the plaintiff contacted Berube, Berube gave assurances that he was in control of the funds and would arrange for full payment. That never happened. In fact, despite repeatedly asking for invoices and assuring payment, Berube eventually asserted that he was not responsible for payment, and the plaintiff should seek payment from Howe.

The plaintiff filed a writ of summons, alleging, among other things, breach of contract, negligent misrepresentation, unjust enrichment, and a violation of the Consumer Protection Act, RSA ch. 358-A. The superior court ruled for the plaintiff on all but the unjust enrichment claim, and awarded attorney's fees pursuant to RSA 358-A:10 (1995). The defendants argue the superior court erred in its application of the Consumer

Protection Act (Act) in that the Act limits its protections to "consumers," and does not afford a private right of action to "sellers" such as the plaintiff in this case. We disagree.

"On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Farrow*, 140 N.H. 473, 474 (1995). We begin by considering the plain meaning of the words of the statute. *See Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 471 (1996). In conducting our analysis "we will focus on the statute as a whole, not on isolated words or phrases." *Id.* "[W]e will not consider what the legislature might have said or add words that the legislature did not include." *Petition of Walker*, 138 N.H. 471, 474 (1994).

The Act provides that "[i]t shall be unlawful for *any* person to use *any* unfair method of competition or *any* unfair or deceptive act or practice in the conduct of *any* trade or commerce within this state." RSA 358-A:2 (1995 & Supp. 2000) (emphasis added). The Act broadly defines who may bring a private action as *"[a]ny* person injured by another's use of any method, act or practice declared unlawful under this chapter." RSA 358-A:10 (emphasis added). "Person" also is defined broadly to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." RSA 358-A:1, I (1995). Thus, the defendants' suggestion that the statute forecloses a seller from a private cause of action is unsupported by a plain reading of the statute's language.

The structure of the statute also militates against the defendants' assertion that the protection provided by the statute is limited to buyers. Although the legislature listed a number of possible violations, it specifically indicated that the list was non-exhaustive. *See* RSA 358-A:2 ("[s]uch unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following" examples). Furthermore, while the legislature exempted certain types of transactions from the provisions of the chapter, it did not exempt private causes of action brought by sellers against deceptive buyers. *See* RSA 358-A:3 (1995 & Supp. 2000).

In the past, we have noted the difficulty in determining which commercial actions are covered by the Act. *See Barrows v. Boles*, 141 N.H. 382, 390 (1996). Looking to the Massachusetts courts for guidance, we have found the following test helpful: "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Id.* (quotation omitted).

In *Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149 (Mass. App. Ct. 1979), the court examined the similarly worded Massachusetts consumer

protection statute and explicitly rejected the argument that "only buyers, not sellers, may avail themselves under § 11" of that statute. *Levings*, 396 N.E.2d at 153. Although section 11 of the Massachusetts statute covers business-to-business transactions, the New Hampshire statute has no separate section for such transactions. It does, however, contain broad language similar to that in Mass. Gen. Laws. Ann. ch. 93A § 11 (West 1997): "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . may . . . bring an action in the superior court . . . ."

The *Levings* court also noted that an abandoned restriction in the original version of the Massachusetts statute specifically limited those who could avail themselves of the statute's protection to "purchasers and lessees." Though the New Hampshire statute is similar in many respects to the Massachusetts statute, *see Chase v. Dorias*, 122 N.H. 600, 602 (1982), our legislature never restricted who could bring suit under the Act to buyers. *Cf. Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., Inc*, 40 F.3d 492, 499 (1st Cir. 1994), *cert. denied*, 515 U.S. 1103 (1995) (holding that the New Hampshire legislature's decision to broadly word the Act instead of adopting a separate section for purely commercial transactions as was done in Massachusetts did not foreclose recovery in business-to-business transactions).

■ Accordingly, we hold that RSA chapter 358-A does not bar sellers from availing themselves of its protection. We are cognizant that our reading according to the plain meaning of the Act is very broad, and may permit suits beyond what the legislature intended when it promulgated the Act. For instance, when Senator Jacobson commented on the breadth of RSA 358-A:2, which defines what acts would be unlawful, he said "It was the feeling of the Committee [Paragraph 1] was too broad an authority and did not specify clearly what unfair methods of competition were or what were unfair or deceptive acts or practices in the conduct of any business." N.H.S. JOUR. 222 (1970). Accordingly, the body adopted the non-exhaustive list of examples as to what would be unlawful. The parties offer, and we can find, no additional legislative history that indicates any intention to limit who may bring suit under the Act.

■ Today's holding, however is narrowed by our decision in *Chase*. While a seller may bring suit under the Act against a deceptive buyer, the relevant transaction must "take place in a trade or business context," *Chase*, 122 N.H. at 602.

In order to have prevailed on its Consumer Protection Act claim, the plaintiff must have demonstrated that the buyer defendant's actions are

among the unlawful acts proscribed by RSA 358-A:2. "The trial court's findings of fact and rulings of law will be upheld unless they lack evidentiary support or constitute clear error of law." *Barrows*, 141 N.H. at 389 (quotation omitted). In this case, the trial court noted that "the multifaceted business relationships presented by the facts of this case trigger the language of this comprehensive" Act. While the court noted that the defendants' actions fell within two particularized types of transactions detailed in RSA 358-A:2, III and V, its order makes clear that it considered the acts unlawful under the broader definition of unlawful acts provided in RSA 358-A:2's introductory paragraph. Specifically, the trial court was concerned that the defendants "kept [their] relationship with Howe intentionally vague and then when it came time to make payment for materials provided by Milford, RCB capitalized upon that vagueness in an attempt to improperly shield itself from liability."

In determining what acts are unlawful under RSA 358-A:2, we look to the federal courts' interpretation of the Federal Trade Commission Act for guidance. *See* RSA 358-A:13 (1995). The Federal Trade Commission determines if actions are unfair or deceptive by inquiring:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5 (1972) (quotation omitted). The trial court properly used this standard to conclude that the defendants' actions violated the Act.

We have held that "[a]n ordinary breach of contract claim does not present an occasion for the remedies under the Consumer Protection Act." *Barrows*, 141 N.H. at 390. The defendants, however, did not simply fail to pay invoices. Rather, they made intentionally vague representations regarding their relationship with Howe to facilitate the use of Howe's account with the plaintiff to procure lumber for the Windsor Heights project. Then, the defendants used those same misrepresentations as a basis for completely disclaiming liability for the goods. It would be harmful for commerce in New Hampshire to allow such unethical and unscrupulous

activity to occur. The legislature promulgated the Act to protect citizens engaged in commerce from this type of activity. Accordingly, we affirm the trial court's application of the Act to the facts of this case.

Today's dissent recognizes the three requirements for a party to obtain relief under the Consumer Protection Act: the plaintiff must prove that: 1) the defendant is a person; 2) the defendant used an unfair method of competition or a deceptive act or practice; and 3) the act occurred in trade or commerce. RSA 358-A:2 (1995 & Supp. 2000).

While the dissent concedes that the plaintiff easily proved the first and third requirements, it concludes that plaintiff is not protected because the unlawful conduct specified under RSA 358-A:2 protects only buyers from the acts or practices of sellers. This conclusion overlooks the plain statutory language which makes it unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. RSA 358-A:2. This broad legislative proscription makes no distinction between buyer and seller.

The unique facts of this case place the plaintiff squarely within the legislatively prohibited conduct because during a continuing commercial relationship it was subjected to a course of deceptive acts and practices by the defendants.

■ The defendants assert one additional argument, which we briefly address. They argue the plaintiff failed to adequately plead the specific statutory sections of the Act upon which the superior court based its decision. Under this State's liberal pleading practices, however, we have held that "where a remedy is given by statute, the statute must be specially declared upon, or, at all events, the facts must be so alleged that the court, on the face of the declaration, can see that the action is founded on the statute." *Fasekis v. Company*, 93 N.H. 468, 471 (1945) (quotation omitted). Count III of the plaintiff's writ is entitled "Consumer Protection RSA 358-A Defendants RCB Realty, Inc., Richard C. Berube First Eastern Mortgage Corporation." It alleges that the defendants solicited business, that they made false representations, and that they used those misrepresentations to later disclaim liability. We decline to require litigants to plead the exact subsections of the Act that they wish the court to address, especially in light of the Act's broad language and non-exhaustive list of potentially unlawful acts. *See* RSA 358-A:2.

The defendants raised an argument relative to attorney's fees in their notice of appeal, but did not brief it. Thus, it is waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

BARRY, J., superior court justice, specially assigned under RSA 490:3, concurred; GRAY and MANIAS, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred; DUGGAN, J., dissented.

DUGGAN, J., dissenting: I respectfully dissent from the majority's holding that the legislature intended RSA chapter 358-A, *Regulation of Business Practices for Consumer Protection*, to protect sellers from deceptive acts by consumers.

The facts of this case amount to little more than the collection of a debt by a small business from an elusive and disingenuous customer. The plaintiff, Milford Lumber Company, Inc. (Milford Lumber), arranged to supply building materials on credit to a local builder, John Howe. Howe informed Milford Lumber that he was involved in a joint venture with Richard Berube to build homes in Londonderry. Over the next few months, Milford Lumber received payments from RCB Realty, Inc. (RCB), a corporation wholly owned by Berube. When payments slowed down, Milford Lumber attempted to collect from Berube. When the payments stopped, Berube informed Milford Lumber that Howe, not Berube, was responsible for the unpaid bills.

Milford Lumber sued Berube and RCB, alleging breach of contract, intentional or negligent misrepresentation, quantum meruit/unjust enrichment and a violation of the Consumer Protection Act (Act), RSA ch. 358-A. The Superior Court (*Dalianis,* J.) found a breach of contract, negligent misrepresentation and a violation of two specific prohibitions of the Act.

The court made overlapping but slightly different damages awards on each of the three claims. On the breach of contract claim, the court ordered the defendants to pay the unpaid balance plus a reasonable finance charge. On the misrepresentation claim, the court awarded the "actual pecuniary loss," the same amount as the unpaid balance. On the consumer protection claims, the court awarded the "actual damages," again, the same amount as the unpaid balance, plus reasonable attorney's fees. *See* RSA 358-A:10, I (1995). The court declined to award double or treble damages as authorized by the Act. *See id.*

RSA 358-A:2 (1995 & Supp. 2000) makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." Thus, to establish a claim under the Act, a plaintiff must prove, first, that the defendant is a person; second, that the defendant used an unfair method of competition or a deceptive act or practice; and, third, that the act occurred in trade or commerce.

Whether the defendant is a person is governed by RSA 358-A:1, I (1995), which defines "person" to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." The defendants in this case clearly fit within this definition. Further, "trade" or "commerce" is defined by RSA 358-A:1, II (1995) to include the "sale ... of any property." The sale of building materials fits within this definition.

The plaintiff, therefore easily proved the first and third requirements for a claim under the Act. As to the second requirement, however, Milford Lumber, as a seller, is not protected by the Act because the unlawful conduct specified under RSA 358-A:2 (1995 & Supp. 2000) only protects buyers from the acts or practices of sellers. This requirement, that the defendant used an unfair method of competition or an unfair or deceptive act or practice, is the core, substantive element of a consumer protection claim. RSA 358-A:2 sets forth in considerable detail, and at some length, the following prohibited conduct:

> Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following:
> I. Passing off goods or services as those of another;
> II. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> III. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
> IV. Using deceptive representations or designations of geographic origin in connection with goods or services;
> V. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such person does not have;
> VI. Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;
> VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
> VIII. Disparaging the goods, services, or business of another by false or misleading representation of fact;

IX. Advertising goods or services with intent not to sell them as advertised;

X. Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

X-a. Failing to disclose the legal name or street address of the business under RSA 361-B:2-a;

XI. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

XII. Conducting or advertising a going out of business sale:

    (a) Which lasts for more than 60 days;

    (b) Within 2 years of a going out of business sale conducted by the same person at the same location or at a different location but dealing in similar merchandise;

    (c) Which includes any goods, wares, or merchandise purchased or received 90 days prior to commencement of the sale or during the duration of the sale and which are not ordinarily sold in the seller's course of business;

    (d) Which includes any goods, wares, or merchandise ordered for the purpose of selling or disposing of them at such sale and which are not ordinarily sold in the seller's course of business;

    (e) Which includes any goods, wares, or merchandise consigned for the purpose of selling or disposing of them at such sale;

    (f) Without conspicuously stating in any advertisement for any such sale, the date such sale is to commence or was commenced;

    (g) Upon the conclusion of which, that business is continued under the same name or under a different name at the same location; or

    (h) In a manner other than the name implies.

In *Roberts v. General Motors Corp.*, 138 N.H. 532 (1994), we observed that "RSA 358-A:2 (1984 & Supp. 1993) lists thirteen representative categories of unlawful acts or practices, *each dealing with transactions for the provision of goods or services to consumers.*" *Roberts*, 138 N.H. at 538 (emphasis added). We have thus already recognized what is obvious from reading the plain language of this section; that is, that the prohibitions in

this section apply to acts by sellers. Indeed, the frequent references to "advertising" and "goods and services" throughout the section unambiguously and exclusively regulate conduct by sellers, while the last subsection regulates with great specificity the particular selling practices relating to going-out-of-business sales. Nothing in RSA 358-A:2, I - XII suggests that the legislature intended to allow sellers to be plaintiffs under the Act.

As one court has stated when determining the scope of its Consumer Protection Act: "The legislative concern was the victimized consumer, not the occasionally victimized seller. Although the act is not explicitly so limited, all of its provisions unmistakably so indicate." *Channel Companies, Inc. v. Britton,* 400 A.2d 1221, 1221 (N.J. Super. Ct. App. Div. 1979) (citation omitted).

Similarly, we recently observed, "[The Act] is a comprehensive statute whose language indicates that it should be given broad sweep, but it is not unlimited in scope." *Averill v. Cox,* 145 N.H. 328, 331 (2000) (quotation and brackets omitted). This reflects our conclusion in *Roberts* that the appropriate approach in analyzing the scope of this section is not to give full effect to the broad language, but rather to focus on the limiting language.

> While the act itself states that it is not limited only to these specific transactions, we agree with the Massachusetts Appeals Court that "rules of statutory construction lead us to conclude that the phrase 'including but not limited to,' which precedes the specification, limits the applicability of the Consumer Protection Act to those *types* of acts therein particularized."

*Roberts,* 138 N.H. at 538 (citation, brackets and ellipsis omitted) (quoting *Mahoney v. Baldwin,* 543 N.E.2d 435, 436 (Mass. App. Ct.), *review denied,* 546 N.E.2d 375 (Mass. 1989)).

None of the acts or practices prohibited by RSA 358-A:2 explicitly applies to conduct of buyers. Indeed, almost all of the enumerated prohibitions expressly apply exclusively to conduct by sellers. Consequently, the "*types* of acts ... particularized" in the Act are those acts performed by sellers. *Id.* Looking at RSA 358-A:2 as a whole demonstrates that the deceptive acts implicated by the Act do not include those performed by buyers.

The superior court, however, read subsections III and V broadly and construed them as being applicable to the buyer in this case.

> Specifically, the Consumer Protection Act's prohibitions against (1) causing ... confusion or misunderstanding as to [an] affiliation, connection or association with ... another," RSA 358-A:2, III; (2) "[r]epresenting that ... a person has a sponsorship, approval, status, affiliation, or connection that he does not have." RSA 358-A:2, V. Simply put, RCB kept its relationship with Howe intentionally vague and then when it came time to make payment for materials provided by Milford, RCB capitalized upon that vagueness in an attempt to improperly shield itself from liability.

This analysis is not consistent with the approach we took in *Roberts*. It focuses on "isolated words and phrases" and not on "the statute as a whole." *Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 471 (1996). If subsections III and V are construed consistently with *Roberts*, it is clear that neither subsection was intended to include sellers as plaintiffs under the Act.

The superior court ruled that the buyer's acts were within subsection III because the buyer caused confusion or misunderstanding as to his affiliation with another. Subsection III is not intended to be that broad. Its limited scope can be gleaned from the limits in subsection II, which complements subsection III. Subsection II also prohibits "causing ... confusion or ... misunderstanding," but as to the "source, sponsorship, approval, or certification of goods or services." RSA 358-A:2, II. This prohibition can be applied only to sellers because only sellers can create confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services.

Subsection III prohibits a person from causing confusion or misunderstanding, but instead of targeting the goods or services themselves, it targets the seller's relationship with other entities. *See* RSA 358-A:2, III. Together, the subsections prohibit causing confusion or misunderstanding in the sale of goods by suggesting that the goods themselves have the approval of another entity or by suggesting that the seller has a business relationship with another entity. Subsection II applies to the goods or services themselves, while subsection III applies to the seller of the goods or services. Reading the statute as a whole, subsection III prohibits a business from causing confusion or misunderstanding as to its affiliation, not in purchasing goods, but rather in providing goods and services.

With respect to subsection V, which prohibits "[r]epresenting that goods or services have sponsorship, [or] approval ... that they do not have or that a person has a sponsorship, approval, status, affiliation, or

connection that such person does not have," RSA 358-A:2, V, the superior court ruled that the second half of that subsection protects sellers as well as buyers. The court read that portion of the subsection to prohibit any person, including a buyer, from representing that the person has an affiliation that he or she does not have. This is a plausible interpretation of subsection V only if the second half of the subsection is read in isolation. The first half of subsection V, however, is expressly limited to prohibiting "representing that *goods or services* have sponsorship, [or] approval, . . . that they do not have." *Id.* (emphasis added). This prohibition can only be applied to sellers. The second half should similarly be read as a prohibition against "representing . . . that a person [who provides goods or services] has a sponsorship, . . . affiliation, or connection that such person does not have." *Id.* Just as subsection III complements subsection II, the two halves of subsection V complement one another; the first half pertains to the goods themselves, while the second half pertains to the provider of the goods.

While a reading of subsections III and V outside the context of the other acts particularized in the Act could certainly support their applicability to buyers, such a construction is inconsistent with *Roberts*. RSA 358-A:2 simply does not, and thus was not intended to, include deceptive acts or business practices by buyers. The second requirement for establishing a claim under the Act is therefore not satisfied.

Beyond examining the requirements for establishing a claim under RSA 358-A:2, examining other sections of the statute verify that the intended scope of the statute is limited to protecting consumers. The Act not only creates a cause of action for private consumers against sellers, it also gives the consumer protection and antitrust bureau of the department of justice broad authority to bring class actions, to seek injunctive relief, to seek civil penalties and to bring criminal prosecutions. *See* RSA 358-A:4, :9 (1995 & Supp. 2000). It is unlikely that the legislature intended to make available the resources of the attorney general's office to businesses suing to collect debts. It is more likely that this statutory authority is intended to assist the relatively less powerful consumer in challenging the unscrupulous businessperson.

The Act also provides incentives for relatively small complaints. Liquidated damages, double and treble damages, and attorney's fees are available. *See* RSA 358-A:10, I (1995). As a way of regulating businesses, the legislature thus encourages complaints that have minimal damages, hoping that lawyers will take these cases to complement the State's own efforts to protect consumers.

Not only do the terms of the Act militate against its invocation by a seller, but such a conclusion is also supported by the public policies behind

the Act. The purpose of the Act is to protect consumers against certain business practices. The Act "is a comprehensive statute designed to regulate business practices for *consumer protection* by making it unlawful for persons engaged in trade or commerce to use various methods of unfair competition and deceptive business practices." *Chase v. Dorais*, 122 N.H. 600, 601 (1982) (emphasis added). The Act is meant "to ensure an equitable relationship between consumers and persons engaged in business." *Hughes v. DiSalvo*, 143 N.H. 576, 578 (1999) (quotation omitted). Thus, we observed in *Hughes*:

> An individual homeowner who decides to sell his residence stands in no better bargaining position than the individual consumer. Both parties have rights and liabilities established under common law principles of contract, tort, and property law. Thus, arming the "consumer" in this circumstance does not serve to equalize the positions of buyer and seller. Rather, it serves to give superior rights to only one of the parties, even though as nonprofessionals both stand on equal footing.

*Id.* at 579 (quotation omitted).

There is no need to arm sellers with a new statutory remedy. Most sellers have the same, or greater, bargaining power than consumers. Additionally, as the overlapping damages awarded by the trial court in this case demonstrate, sellers have wholly adequate common law remedies. *See Barrows v. Boles*, 141 N.H. 382, 390 (1996) ("An ordinary breach of contract claim does not present an occasion for the remedies under the Consumer Protection Act.").

One other court has extended the protections of its consumer protection statute to sellers. In *Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149, 153 (Mass. App. Ct. 1979), the Massachusetts Appeals Court examined a similarly worded Massachusetts statute and held that sellers may avail themselves of it. The Massachusetts legislature, however, had previously explicitly repealed a section of the act that limited its protections to "purchasers and lessees." Thus, there was clear legislative intent to extend the statute to sellers. No comparable action has been taken by the New Hampshire Legislature. *Levings* is thus weak support for extending the Act to protect sellers.

After today's decision, an individual consumer may be liable under the Act to a corporation seeking to collect a debt. Sellers will be able to ask for double and treble damages. *See* RSA 358-A:10, I. In addition, sellers may collect attorney's fees without making the usual common law showing of bad faith. *Compare Harkeem v. Adams*, 117 N.H. 687, 691 (1977), *with*

28

RSA 358-A:10, I. While today's holding will not apply to transactions between two private parties, *see Chase,* 122 N.H. at 601; *Hughes,* 143 N.H. at 578, and sellers will still have to show that the conduct "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce," *Hobin v. Coldwell Banker Residential Affiliates,* 144 N.H. 626, 635 (2000) (quotation omitted), today's decision represents a substantial departure from our traditional jurisprudence, in which we have never applied the Act to protect a merchant business from the rascality of one of its customers.

I would hold that a seller suing to collect a debt from a buyer cannot invoke the remedies of the Consumer Protection Act. If the Act is to be extended to include sellers as plaintiffs, the legislature is the appropriate body to do so.