Sullivan
No. 2003-804

THE STATE OF NEW HAMPSHIRE

v.

JAMES MORAN d/b/a EXTERIOR SOLUTIONS

Argued: September 9, 2004
Opinion Issued: October 21, 2004

*Kelly A. Ayotte*, attorney general (*Constance N. Stratton*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

NADEAU, J. The defendant, James Moran d/b/a Exterior Solutions, appeals a conviction of violating RSA chapter 358-A (1995 & Supp. 2003), the New Hampshire Consumer Protection Act (CPA), following a bench trial in Superior Court (*Morrill*, J.). We affirm.

The trial court could have found the following facts. On October 25, 2001, an employee of the defendant, Darryn Lawrence, entered into a contract to install siding on the home of Richard and Therese Robidoux. The

contract specified a total price of $6,800 with $2,800 to be paid before the defendant began the job. In addition, the contract stated the work would be done sometime between March 2002 and April 2002. Finally, the Robidouxs agreed to make an initial deposit of $500 to hold the price for the spring installation, leaving $2,300 to be paid before the work began.

On February 5, 2002, Lawrence called Therese Robidoux to inquire about doing the work early. The following day, when the defendant telephoned Therese for an answer, the Robidouxs agreed to have the work done early. During the conversation, the defendant requested $2,300 to buy materials before he began the job. The same day the defendant and Lawrence arrived at the Robidouxs' home to pick up a check for the amount stated. The check was made out to the defendant, at his request, and was cashed later that day. The garage doors were to be left open so the materials could be delivered there and the defendant could begin the work.

On February 7, 2002, Therese telephoned the defendant because the materials had not been delivered. In response, the defendant told Therese the siding company was out of the color she had requested but that it should be in by the end of the week. On February 8, 2002, the materials still had not been delivered. Again, Therese telephoned the defendant, who stated that he had another small job to finish before starting the siding project. Later that day, the defendant told Therese he did not have enough crew to start the job. Further attempts to contact the defendant were unsuccessful.

On March 25, 2002, Therese finally contacted the defendant. During the phone conversation, the defendant said he could no longer work in New Hampshire and he could either deliver the materials and have someone else do the job, or refund the deposit. Therese asked for a refund and the defendant said she would have it by the end of the week. Therese subsequently learned that the defendant was still able to work in New Hampshire. No check arrived and when Therese tried to contact the defendant again she discovered the office phone had been disconnected. A later conversation took place in which the defendant said he was having a hard time getting the money together. He stated he wanted to get the issue behind him and he should have a check to Therese by the beginning of the following week. No check arrived. Later, the defendant left a message on Therese's answering machine stating his office had been closed but if she needed to reach him to call his cell phone; that number, however, had been disconnected as well. According to Therese, in one of the conversations with the defendant, he stated the siding was ordered

from Alsiding, but there was no record of the order. Therese had no further contact with the defendant after these events.

On appeal, the defendant argues the trial court erred in concluding that the facts proved in this case constituted the crime of unfair or deceptive business practices under the CPA. In ruling upon the sufficiency of the evidence, we must first decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Evans*, 134 N.H. 378, 383 (1991).

The CPA provides in relevant part:

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following . . . .

RSA 358-A:2 (1995 & Supp. 2003).

The CPA proscribes unfair or deceptive trade practices in general, and sets forth a list of specific types of conduct that qualify as unfair or deceptive trade practices. *Id.* The trial court found that the defendant's conduct did not fall within any of the enumerated categories under the CPA, but rather fell within the general prohibition barring unfair or deceptive trade practices.

We have recognized that the general provision of the CPA is broadly worded, and not all conduct in the course of trade or commerce falls within its scope. *Barrows v. Boles*, 141 N.H. 382, 390 (1996). Because of the difficulty often associated with determining which commercial actions, not specifically delineated, are covered by the act, we employed the rascality test in *Barrows*. *See Milford Lumber Co. v. RCB Realty*, 147 N.H. 15, 17 (2001). In doing so, we clarified our ruling in *Roberts v. General Motors Corp.*, 138 N.H. 532, 538-39 (1994), in which we had held that in order for conduct *not particularized* by the enumerated categories in the CPA to qualify as an unfair or deceptive trade practice, that conduct must be of the same type as proscribed by the enumerated categories. *See Barrows*, 141 N.H. at 390.

Under the rascality test, "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Milford Lumber Co.*, 147 N.H. at 17 (quotations omitted). The rascality test applies equally to the analysis of civil and criminal cases. In determining what actions are

unlawful outside of the enumerated categories of RSA 358-A:2, we also look to the federal courts' interpretation of the Federal Trade Commission Act for guidance. *See* RSA 358-A:13. The Federal Trade Commission determines if actions are unfair or deceptive by inquiring:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise— whether, in other words, it is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Milford Lumber Co.*, 147 N.H. at 19 (quotation omitted).

The defendant argues that we have established a three-prong test to determine whether the CPA covers certain conduct: the activity involved, the nature of the transaction, and the parties. *See Hughes v. DiSalvo*, 143 N.H. 576, 578 (1999). However, the defendant's reliance upon *Hughes* is misplaced. We consider these three factors when determining whether a transaction is a personal or a business transaction as it applies to the CPA. *Id.* at 578. They are not relevant to the determination we make here.

Massachusetts courts have applied the rascality test under a statute similar to the CPA. In *Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149 (Mass. App. Ct. 1979), the court stated that a violation of the Massachusetts act could have been found if a buyer ordered goods and services from a seller and thereby induced the seller to work for the buyer, all the while never intending to pay for the labor and materials. *Id.* at 154 (civil damages sought). In *Anthony's Pier Four v. HBC Associates.*, 583 N.E.2d 806 (Mass. 1991), the Massachusetts Supreme Judicial Court said that "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice" under the Massachusetts act. *Id.* at 821 (quotation omitted). In addition, the court stated that actions involving fraudulent representations in knowing disregard of the truth encompass culpable, willful behavior under the act. *Id.* at 822. This language fits the case at hand.

The defendant argues his conduct was not unlawful under RSA 358-A:2, but was merely a breach of contract. We have held that an ordinary breach of contract claim does not violate the CPA. *Barrows*, 141 N.H. at 390. The defendant, however, did not fail simply to perform his duties under the contract. Rather, the trial court could reasonably have found that he

induced Therese Robidoux to give him $2,300 for materials at a time when he clearly did not intend to perform the work. *See Chroniak v. Golden Inv. Corp.*, 983 F.2d 1140, 1146 (1st Cir. 1993) (a practice may be deceptive if it can reasonably be found to have caused an individual to act differently from the way he otherwise would have acted). Furthermore, he made continuous misrepresentations in an ongoing effort to avoid performing or refunding the deposit.

The defendant argues his misrepresentations were made after the contract was signed and thus his conduct did not induce Therese to enter into the contract. The evidence supports the trial court's finding that at the time the defendant received the $2,300 payment from Therese he had no intention to purchase the materials for her job or to perform the work. Furthermore, the defendant's unfair and deceptive conduct placed Therese in continuous peril. After he cashed Therese's deposit, he made ongoing misrepresentations clearly designed to dissuade her from reclaiming her funds. Therese could not cancel payment because the check was cashed the same day.

■ The defendant acted with a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce. *See Milford Lumber Co.*, 147 N.H. at 17. It would be harmful for commerce in New Hampshire to condone such unethical and unscrupulous activity. The legislature promulgated the CPA to protect consumers from this type of activity. *Id.* at 20. We conclude that the allegations of misrepresentation against the defendant support a claim of unfair or deceptive trade practices under the CPA. Accordingly, we affirm the trial court's application of the CPA to the facts of this case.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.