**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Christopher Romano, et al.

    v.                                                    Civil No. 15-cv-384-AJ
                                                      Opinion No. 2016 DNH 002
Site Acquisitions, Inc.


### O R D E R

In a case that has been removed from the New Hampshire Superior Court, Christopher Romano, Michael Petros, and Shane Bruneau (collectively, "plaintiffs") bring suit against their former employer, Site Acquisitions, Inc.[1] ("Site Acquisitions" or "defendant"), alleging that the defendant failed to make payments to the plaintiffs earned as part of an incentive program between the defendant and AT&T.  Am. Compl., Doc. No. 13.

Before the court is the defendant's motion to dismiss two counts (Counts IV and V) of the plaintiffs' second amended complaint.  Doc. No. 15.  For the reasons that follow, the defendant's motion is granted.

---

[1] In its motion to dismiss, the defendant notes that it "was converted to a limited liability company effective January 1, 2015" and, therefore, "[t]he correct name for [the] [d]efendant is Site Acquisitions, LLC."  Doc. No. 15-1 at 1.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003)).  Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In other words, the "plaintiff[s'] obligation to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [the plaintiffs'] claims across the line from conceivable to plausible . . . ." Id. at 570.  If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of

mere conjecture, the complaint is open to dismissal." <u>Tambone</u>,
597 F.3d at 442.

## <u>Background</u>

Accepting the factual allegations set forth in the
plaintiffs' amended complaint as true, the relevant facts are as
follows.

Site Acquisitions provides services to the wireless
telecommunications industry, including the siting and
installation of telecommunications towers.  Am. Compl. ¶ 8, Doc.
No. 13.  At various times between 2013 and 2015, the plaintiffs
served on tower crews for Site Acquisitions.  <u>Id.</u>  ¶ 9.  A tower
crew is responsible for installing telecommunications tower
systems ("cell phone towers").  <u>Id.</u> ¶ 10.

At some point, AT&T contracted Site Acquisitions to install
cell phone towers in New Hampshire.  <u>Id.</u> ¶ 12.  AT&T has an
incentive program for tower crews designed to encourage greater
performance and minimize substandard tower installations.  <u>Id.</u> ¶
13.  Under the program, if tower crews met certain quality
standards established by AT&T, they were entitled to non-
discretionary bonuses.  <u>Id.</u> ¶¶ 15-16.  The bonuses were intended
to be directly passed to the tower crews.  <u>Id.</u> ¶ 17.

During a meeting held in 2013, a Site Acquisitions manager
explained to the plaintiffs' tower crew that AT&T was offering

3

incentive pay under the program, and the benefits would be paid directly to the tower crew. Id. ¶¶ 21-23. Based on the representations made by Site Acquisitions, the plaintiffs completed over twenty cell phone tower installations, working weekends and up to seventy hours a week. Id. ¶¶ 24-25. Nearly every cell phone tower completed by the plaintiffs qualified for full payment under AT&T's incentive program. Id. ¶ 26.

Site Acquisitions received payments from AT&T under the incentive program, but did not pass any portion of the funds to the plaintiffs. Id. ¶ 29. Site Acquisitions knew, however, that the payments were intended for the plaintiffs and other qualifying tower crews. Id. ¶ 30. Further, Site Acquisitions never contacted its tower crews about the incentive payments. Id. ¶ 31.

In 2014, a member of the plaintiffs' tower crew asked Site Acquisitions when the crew would receive their incentive payments. Id. ¶ 34. Site Acquisitions stated that the plaintiffs' tower crew would receive payment by the end of 2014. Id. ¶ 35. Instead, the plaintiffs received a holiday bonus significantly smaller than the AT&T incentive program payments the plaintiffs expected to receive. Id. ¶ 36.

On June 25, 2015, the plaintiffs filed an action against Site Acquisitions in Rockingham County Superior Court. Doc. No. 1 at 1. On September 17, 2015, the defendant removed the action

4

to this court.  Doc. No. 1.  The plaintiffs' second amended complaint contains seven counts against the defendant: (I) breach of contract (II) promissory estoppel, (III) unjust enrichment, (IV) violation of the New Hampshire Consumer Protection Act, (V) request for equitable accounting, (VI) failure to pay overtime wage, and (VII) failure to pay all wages due.  Doc. No. 13.

## Discussion

The defendant moves to dismiss counts IV and V of the plaintiffs' second amended complaint.  Doc. No. 15.  The court examines each count in turn.

I.   **Count IV – The New Hampshire Consumer Protection Act**

The New Hampshire Consumer Protection Act ("CPA"), New Hampshire Revised Statutes Annotated ("RSA") § 358-A:2, states that it is "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  RSA § 358-A:2.  "Any person injured by another's use of any method, act or practice declared unlawful under [the CPA] may bring an action" under the statute.  RSA § 358-A:10.

However, although "the CPA is broadly worded . . . not all conduct in the course of trade or commerce falls within its scope."  State v. Moran, 151 N.H. 450, 452 (2004) (citing

5

Barrows v. Boles, 141 N.H. 382, 390 (1996)). The CPA "provides a non-exhaustive list of specific acts deemed to be unfair or deceptive." State v. Sideris, 157 N.H. 258, 262 (2008) (citing RSA § 358-A:2, I-XIV). "In determining which commercial actions, not specifically delineated, are covered by the [CPA], [courts] have employed the 'rascality' test." ACAS Acquisitions (Precitech) Inc. v. Hobert, 155 N.H. 381, 402 (2007)(citing Moran, 151 N.H. at 452). "Under the rascality test, the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Hobert, 155 N.H. at 402.

Count IV of the plaintiffs' second amended complaint alleges that the defendant violated the CPA by withholding incentive payments from AT&T intended for the plaintiffs and other tower crews. Am. Compl. ¶¶ 59-67, Doc. No. 13. The plaintiffs claim that this conduct was an "unfair and deceptive act," as defined in the CPA. Id. ¶ 67.

In its motion to dismiss, the defendant argues that the plaintiffs' complaint does not properly allege a violation of the CPA because the claim "arise[s] directly out of their employment relations with [the defendant]" and "[c]onduct stemming from the employment relationship is private in nature and distinct from the genre of marketplace or consumer transactions." Doc. No. 15-1 at 4. The defendant additionally

6

argues that, even assuming the CPA permits claims stemming from employment relationships, the claim must nonetheless be dismissed because it fails to satisfy the "rascality test" as the claim is "grounded on [the defendant's] alleged breach of contract." Id. at 6.

The plaintiffs object, arguing that their CPA claim does not stem "from some simple failure to pay ordinary wages, but from the unfair manner in which [the defendant] handled money received from AT&T which . . . [was] specifically intended to benefit the [p]laintiffs." Doc. No. 16-1 at 2-3. Additionally, the plaintiffs contend that, in viewing the complaint in the light most favorable to them, a finder of fact could reasonably find that the defendant's conduct satisfies the rascality test. Id. at 8.

Here, contrary to the defendant's blanket assertion that a CPA claim "stemming from [an] employment relationship" is improper, doc. no. 15-1 at 4, "[t]he New Hampshire Supreme Court has never decided whether the CPA applies to employer-employee relations." Jon-Don Prods., Inc. v. Malone, No. CIV. 02-429-M, 2003 WL 1856420, at *3 (D.N.H. Apr. 10, 2003) (quoting Bartholomew v. Delahaye Grp., Inc., No. CIV. 95-20-B, 1995 WL 907897, at *9 (D.N.H. Nov. 8, 1995)). Nevertheless, the mere allegation of a breach of an employment contract, or any ordinary contract, fails to state a CPA claim. See Sideris, 157

7

N.H. at 262 ("An ordinary breach of contract claim . . . is not a violation of the CPA"); Jon-Don Prods., Inc., 2003 WL 1856420, at *3 (holding that an alleged breach of an employment contract "fails to state a claim cognizable under the [CPA]").

Here, even making all reasonable inferences in favor of the plaintiffs, the complaint fails to state a CPA claim. At worst, the complaint alleges that the defendant entered into a contract with AT&T to install cell phone towers, accepted AT&T's incentive program to provide bonuses to tower crews for good work, told tower crews that they would receive bonuses pursuant to the incentive program, and, after the cell phone towers were installed, knowingly kept the bonuses intended for the qualifying tower crews for its own benefit.

Although the plaintiffs' allegations are serious, "misrepresentations . . . [and] broken promises alone do not rise to the level of rascality where successful [CPA] claims dwell." Franchi v. New Hampton Sch., 656 F. Supp. 2d 252, 255-66 (D.N.H. 2009); see also Barrows, 141 N.H. at 390 ("selfish bargaining and business dealings will not be enough to justify a claim for damages under the [CPA]")) (quotation marks omitted). Thus, even if the defendant knowingly misrepresented to AT&T and the plaintiffs that they would pay tower crews their earned incentive payments, the plaintiffs have not stated a CPA claim. The defendant's motion to dismiss count IV is granted.

8

## II. Count V – The Plaintiffs' Request for Equitable Accounting

In Count V, the plaintiffs request an equitable accounting of the incentive payments received by the defendant from AT&T. Am. Compl. ¶ 72, Doc. No. 13. In the complaint, the plaintiffs allege that the defendant has not disclosed any received incentive payments, and, without an equitable accounting of the payments, the plaintiffs are unable to determine the amount owed to them. Id. ¶ 70-71.

In its motion to dismiss, the defendant argues that the plaintiffs' "[e]quitable [a]ccounting claim is barred by their ability to conduct discovery via their legal claims for relief that constitute this action." Doc. No. 15-1 at 8. The plaintiffs object, contending that they have "sufficiently pleaded . . . a plausible right to accounting, and an accounting is an entirely appropriate remedy." Doc. No. 16-1 at 10.

"The propriety of affording equitable relief rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case." Gutbier v. Hannaford Bros. Co., 150 N.H. 540, 541 (2004) (reversing a trial court's decision to grant a petition in equity requesting that the superior court grant discovery prior to the commencement of litigation). In this case, the plaintiffs "know[] the form that the action should take . . . [and] know[] the identity of the defendant." Gutbier, 150 N.H. at 545. Further, the plaintiffs

9

have not established a need for accounting as the exact same information could be found in future discovery.  Therefore, although it may be "cheaper, faster and easier to file a petition in equity for discovery than to . . . seek normal discovery, [the plaintiffs] ha[ve] a plain, adequate and complete remedy at law."  Id. (quotations marks omitted).  The defendant's motion to dismiss count V is granted.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss, doc. no. 15, is granted.  Accordingly, counts IV and V of the plaintiff's second amended complaint, doc. no. 13, are dismissed.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge


January 4, 2016

cc:  Brandon D. Ross, Esq.
     Peter G. Callaghan, Esq.