Nashua District Court
No. 2006-743

### DOREEN KELTON

v.

### HOLLIS RANCH, LLC

Submitted: May 23, 2007
Opinion Issued: July 17, 2007

*Wells Law Office*, of Putney, Vermont (*Timothy J. Wells* on the brief), for the plaintiff.

*Hamblett & Kerrigan, P.A.*, of Nashua (*Andrew J. Piela* on the brief), for the defendant.

HICKS, J. The plaintiff, Doreen Kelton, appeals an order of the Nashua District Court (*Leary*, J.) ruling that the Consumer Protection Act (CPA) did not impose strict liability upon the defendant, Hollis Ranch, LLC (Hollis Ranch). RSA 358-A:2 (Supp. 2006). We affirm.

The essential facts are not in dispute. At an Ohio auction on April 24, 2004, "Lazy H" Horse and Trailer Sales (Lazy H) sold a horse named "ALS April Magic" (Magic) as a gelding to Hollis Ranch. Hollis Ranch sold Magic as a gelding one month later to Kelton for $4,535. Soon thereafter, while stabled next to a mare, Magic began to display "stud-like" qualities.

Magic, it turned out, had a trick up his sleeve. He had an undescended right testicle that produced testosterone, causing the stud-like behavior. Kelton took Magic to the Tufts University Hospital for Large Animals on March 15, 2005. There, Dr. Jose Garcia-Lopez, a veterinarian with ten years experience treating large animals, performed an examination. The trial judge highlighted pertinent parts of Dr. Garcia-Lopez' testimony in his order as follows:

> [Dr. Garcia-Lopez] stated that an examination of the horse, even by a veterinarian, would not have indicated it had a recessed testicle. The horse had a surgical scar on its scrotum consistent

with a gelding procedure. His own physical examination, including an ultrasound and palpitation [*sic*] of the area, did not indicate a recessed testicle. The only evidence of testicular tissue was the positive testosterone lab results. Such a test is not a usual and customary exam to be administered prior to purchasing a horse, including one represented as being a gelding.

Neither Hollis Ranch nor Kelton would have had reason to know of the undescended testicle. Dr. Garcia-Lopez testified that there was "no reason for Hollis Ranch or Kelton to question [that] the horse was a gelding and no layperson or veterinarian would have any reason to suspect otherwise." On March 18, 2005, Dr. Garcia-Lopez removed Magic's undescended testicle.

Kelton filed a CPA claim to recoup the cost of the procedure, other related medical and travel expenses, and attorney's fees. She argued that Hollis Ranch violated RSA 358-A:2, VII, which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" and RSA 358-A:2, V, which prohibits "[r]epresenting that goods have . . . characteristics . . . that they do not have." Kelton argues that by misrepresenting Magic as a gelding, Hollis Ranch violated subsections V and VII regardless of its good faith lack of knowledge. Hollis Ranch argues that because it acted in good faith, it did not act unfairly or deceptively as the statute requires. The trial court ruled that "in order for a misstatement to constitute a violation [of the CPA], the defendant must be aware or, at a minimum, have a reasonable basis to suspect that its representation is unreliable or untrue." The court found that: "Hollis Ranch's justifiable reliance on representations made by a third party when it had no reason to know or suspect otherwise does not rise to the level of [an] unfair or deceptive [act or practice] . . . ."

The issue on appeal is whether the trial court erred in ruling that RSA 358-A:2 requires Kelton to show that Hollis Ranch, "at a minimum, [had] a reasonable basis to suspect that its representation is unreliable or untrue" in order to constitute a violation of the statute.

Statutory interpretation is a question of law. Accordingly, we review the trial court's ruling *de novo*. *See State v. Boulais*, 150 N.H. 216, 218 (2003). When construing a statute, we first examine its language ascribing the plain and ordinary meaning to the words used by the legislature. *Id.* We will neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include. *Brown v. Brown*, 133 N.H. 442, 445 (1990). "The legislative intent is to be found not in what the

legislature might have said, but rather in the meaning of what it did say." *Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23 (1979).

█ "Legal liability is said to be strict when it is imposed even though the defendant has committed no legal fault consisting of the violation of a common law or statutory duty." *Bagley v. Controlled Environment Corp.*, 127 N.H. 556, 558 (1986). However, "strict liability for damages has traditionally met with disfavor in this jurisdiction." *Id.* at 559. In New Hampshire, strict liability is available only "where the Legislature has provided for it or [in] those situations where the common law of this state has imposed such liability and the Legislature has not seen fit to change it." *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 53 (1972) (ellipsis omitted).

█ The plain language of the statute, as the trial court noted, indicates that some element of knowledge on the part of the defendant is required. The relevant portion of RSA 358-A:2 reads:

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following . . . .

The statute expressly states that only practices which are "deceptive" or "unfair" subject the actor to liability. The first definition of "deceive" listed in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY is "to take unawares esp. by craft or trickery." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 584 (unabridged ed. 2002). WEBSTER'S defines "unfair" as being "marked by injustice, partiality, or deception: unjust, dishonest." *Id.* at 2494. The trial court properly construed the legislature's use of the words "deceptive" and "unfair" as requiring a degree of knowledge or intent. This construction is entirely consistent with our holding in *State v. Moran* requiring a level of rascality to establish a CPA violation. *State v. Moran*, 151 N.H. 450, 452 (2004). Kelton has pointed to no language in the statute which, either expressly or impliedly, imposes strict liability.

Accordingly, we hold that RSA 358-A:2 did not impose strict liability upon Hollis Ranch. *See Moulton*, 112 N.H. at 53; *accord Bergman v. Jefferson-Pilot Life Ins. Co.*, No. Civ. A. 03-4459, 2003 WL 23142155 (D. Pa. December 30, 2003); *Samuels v. Fox*, No. Civ. A. 98-3426, 2000 WL 1059822 (D. La. July 31, 2000); *Millen Industries Inc. v. Flexo-Accessories Co.*, 5 F. Supp. 2d 72 (D. Mass. 1998); *Crabtree Investments v. Merrill Lynch*, 577 F. Supp. 1466, 1469 (D. La. 1984), *aff'd*, 738 F.2d 434 (5th Cir.

1984). There is ample evidence to support the district court's factual determination that Hollis Ranch made a good faith mistake. Therefore, we affirm.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.