Portsmouth District Court
No. 2008-808

DOUGLAS C. BEER

v.

TERRY M. BENNETT

Argued: January 13, 2010
Opinion Issued: April 20, 2010

*Keane & MacDonald, P.C.*, of Portsmouth (*Douglas W. MacDonald* on the brief and orally), for the plaintiff.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Benjamin T. King* on the brief and orally), for the defendant.

HICKS, J. The defendant, Terry M. Bennett, appeals a decision of the Portsmouth District Court (*DeVries*, J.) finding, *inter alia*, that he violated the Consumer Protection Act (CPA), RSA ch. 358-A (2009), in the sale of a car to the plaintiff, Douglas C. Beer. The plaintiff cross-appeals on issues related to the award of damages. We affirm.

The trial court found, or the record supports, the following facts. At the time of the transaction at issue, the defendant was a New Hampshire

registered automobile dealer doing business under the name The Nickeled Stork. He posted an advertisement on his internet website offering the following for sale:

> 1958 Fiat Osca Spyder 1.5 liter DOHC engine 4 speed trans. Engine and trans are out of the car, but we have most of a spare engine that comes with the car. Body is in very good condition, recently painted Robin's egg blue. Top bows will need new top added and some other upholstery work required, but quite rare PininFarina Coachwork, pretty vigorous performance from a well designed DOHC Italian Motor.

$6500

The plaintiff restores old cars as a hobby and had been searching for some time for a car like the one the defendant advertised. He contacted the defendant and, after some negotiation, purchased the advertised vehicle for $6,000.00. He also arranged to have the car shipped to him at a cost of $1,298.00.

The plaintiff testified that upon receipt of the car, he discovered that it was missing a number of parts necessary to make it operable, including "a bell housing starter, generator, distributor, engine mounts, fan, exhaust manifold . . . [and] the entire hand-brake mechanism." He contacted the defendant about the missing parts, but they could not resolve the issue and the instant legal action ensued.

Following a hearing on the merits, the trial court found in favor of the plaintiff and awarded judgment in the amount of $16,197.00. The award included refund of the purchase price and shipping costs, plus payment of the plaintiff's "reasonable air fare and expenses for attendance at trial," and attorney's fees and costs. The court also ordered the plaintiff to return the Fiat to the defendant upon payment of the judgment and the cost of return shipment. If the defendant failed to make payment and arrangements for return within sixty days, he would forfeit ownership of the Fiat. The court declined to award enhanced damages, concluding that "the record does not support a finding of a willful [or] knowing violation of [the CPA]."

On appeal, the defendant argues that the trial court erred in: (1) finding that he violated the CPA; (2) finding that he had a duty to disclose the car's alleged defects; (3) finding him liable for negligent misrepresentation; (4) failing to employ the appropriate measure of damages; and (5) refusing to attribute any contributory fault to the plaintiff. In his cross-appeal, the plaintiff contends that the trial court erred in failing to find a willful or knowing violation of the CPA and in failing to award double or treble damages. "The trial court's findings of fact and rulings of law will be upheld

unless they lack evidentiary support or constitute clear error of law." *Milford Lumber Co. v. RCB Realty*, 147 N.H. 15, 19 (2001) (quotation omitted).

The defendant first challenges the trial court's finding that he violated the CPA. The CPA provides, in part:

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following . . . [enumerated acts].

RSA 358-A:2. While we believe the evidence would sustain a finding that the defendant committed one or more of the enumerated acts, *see* RSA 358-A:2, V ("Representing that goods . . . have . . . characteristics . . . that they do not have . . . ."); :2, VII ("Representing that goods . . . are of a particular standard, quality, or grade . . . if they are of another."), the trial court does not appear to have made such a finding. Rather the court stated:

> By advertising this vehicle as having "pretty vigorous performance" defendant violated RSA 358-A, the consumer protection statute. Having never driven nor examined the goods advertised, the defendant could not lawfully represent this vehicle to a potential buyer in the manner in which it was advertised. He had no knowledge this vehicle could perform at all.

The defendant first asserts that "the evidence at trial, including [the plaintiff's] own testimony, established that [the defendant] made no misrepresentations." Specifically, he cites the following exchange with the plaintiff at trial:

> Q. There is no specific statement contained in this advertisement that isn't true, sir. Isn't that correct?
>
> A. That's right. That's why I bought it.

The transcript reveals, however, that the defendant's counsel dissected the advertisement and inquired whether the plaintiff agreed with literal interpretations of individual portions thereof. After reading the plaintiff's entire testimony, we cannot agree that he admitted that the defendant made no misrepresentations. For instance, just prior to the above-quoted exchange, the defendant's counsel asked the plaintiff about the very statement the trial court found violative of the CPA: "And you agree with me that that motor that you received is capable of vigorous

performance?" The plaintiff answered: "Yes, under specific conditions. Obviously, if it's not operable it wouldn't." We also note that the trial court denied the defendant's proposed finding of fact that "[a]ll statements contained in the Nickeled Stork's website description of the car were true."

Moreover, even if the individual representations could be read as literally true, the advertisement could still violate the CPA if it created an overall misleading impression. *Cf. Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002) (construing New Jersey Consumer Fraud Act). Accordingly, we are not persuaded by the defendant's piece-meal examination of the advertisement at issue.

The defendant next argues that even if he made a misrepresentation, he did so unintentionally and therefore cannot be found to have violated the CPA. In particular, the defendant asserts that because he never inventoried the Fiat's parts, "he could not have specifically known the parts included and the parts missing."

The trial court found that the defendant acquired the Fiat in trade for another vehicle and that he never inventoried the car's parts, but rather stored the car, in the form in which he acquired it, until it was shipped to the plaintiff. The court also denied the plaintiff's proposed finding that the defendant knowingly violated the CPA. The defendant concludes that because his alleged misrepresentation was unintentional, it fails to satisfy both the knowledge or intent requirement of *Kelton v. Hollis Ranch*, 155 N.H. 666, 668 (2007), and the rascality requirement noted in *Hair Excitement v. L'Oreal U.S.A.*, 158 N.H. 363, 370 (2009).

In *Kelton*, we affirmed a ruling by the trial court that the CPA "did not impose strict liability upon the defendant," *Kelton*, 155 N.H. at 666, holding that the statute's plain language "indicates that some element of knowledge on the part of the defendant is required," *Kelton*, 155 N.H. at 668. This case is factually distinguishable from *Kelton. Kelton* involved the sale of a horse that was represented to be a gelding but that actually had a recessed testicle. *Id.* at 666. Testimony by a veterinarian indicated that the horse "had a surgical scar . . . consistent with a gelding procedure" and that "an examination of the horse, even by a veterinarian, would not have indicated that it had a recessed testicle." *Id.* at 666-67 (quotation omitted). The veterinarian further testified that neither the buyer nor the seller would have had reason to question that the horse had been gelded and that "no layperson or veterinarian would have any reason to suspect otherwise." *Id.* at 667 (quotation omitted).

Here, that the Fiat was missing necessary parts would have been easily ascertainable upon inspection. *Cf. Glickman v. Brown*, 486 N.E.2d 737, 741 (Mass. App. Ct. 1985) (holding that "a negligent misrepresentation

of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of" the Massachusetts consumer protection statute), *abrogated on other grounds by Cigal v. Leader Development Corp.*, 557 N.E.2d 1119, 1121 n.8 (Mass. 1990). The defendant testified that the plaintiff never asked for "a list of everything [he had] and [didn't] have with this car," but if he had, the defendant could have made such a list. The defendant also testified that he considered the Fiat "[n]ot important enough that I ever took the time to open the trunk" to find various parts inside. We cannot equate the *Kelton* defendant's "good faith mistake," *Kelton*, 155 N.H. at 669, with, in the trial court's words, the defendant's "rather cavalier attitude." Moreover, in *Snierson v. Scruton*, 145 N.H. 73 (2000), we held that allegations of misrepresentation of material facts made to induce another to enter into a contract by one who "had reason to know that she did not have sufficient knowledge to make such statements and, [who] therefore, made such statements with reckless disregard for their truth or correctness," (quotation omitted) "support[ed] a claim of unfair or deceptive trade practices under the [CPA]." *Snierson*, 145 N.H. at 81. We conclude that the defendant's reckless disregard for the truth of his statements satisfies the degree of knowledge or intent required by *Kelton*.

The rascality test is used to determine "which commercial actions, not specifically delineated, are covered by the [CPA]." *ACAS Acquisitions v. Hobert*, 155 N.H. 381, 402 (2007). We assume for purposes of this appeal that the rascality test applies. The test requires the plaintiff to show "that the defendant's acts attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Hair Excitement*, 158 N.H. at 370 (quotation omitted). The CPA does not supply a remedy for "an ordinary breach of contract claim." *Milford Lumber*, 147 N.H. at 19 (quotation and brackets omitted).

The defendant, however, did not merely breach his contract to sell represented goods. *Cf. State v. Moran*, 151 N.H. 450, 453-54 (2004) (noting CPA defendant did more than simply fail to perform under contract); *Milford Lumber*, 147 N.H. at 19 (same). Rather, he made representations, knowing he lacked sufficient knowledge to substantiate them, to induce the plaintiff's purchase. We conclude "that the defendant's acts attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Hair Excitement*, 158 N.H. at 370 (quotation omitted). As we stated in *Moran*:

> It would be harmful for commerce in New Hampshire to condone such unethical and unscrupulous activity. The legislature promulgated the CPA to protect consumers from this type of activity. We

conclude that the allegations of misrepresentation against the defendant support a claim of unfair or deceptive trade practices under the CPA.

*Moran*, 151 N.H. at 454. (citation omitted).

The defendant next argues that the trial court's decision is based upon the erroneous premise that he owed a duty to disclose the Fiat's alleged defects to the plaintiff. He cites the trial court's reference to "the duty he has as a registered automobile dealer to advertise goods to the consumer for sale" and its conclusion that "[m]erely telling the consumer to come look for himself does not absolve the seller of responsibility for his advertisement or his duty of care."

It is unclear to what extent the trial court may have determined that the defendant owed a special duty by virtue of being a registered automobile dealer. In addition to making the above-cited statements in its order, the trial court granted the following proposed ruling: "A[] NH licensed automobile dealer has a duty to disclose material facts to potential buyers, and provide accurate information to consumers." We are not aware of any duty of disclosure imposed specifically upon registered automobile dealers by statute or common law that would apply in this case, nor have the parties cited any. *Cf.* RSA 261:22, IV-a (Supp. 2009) (duty to disclose that vehicle is a salvage or rebuilt vehicle, violation of which is an unfair or deceptive act or practice under the CPA).

Nevertheless, the trial court's error, if any, is of no consequence. The ruling noted above is contained in a section of the plaintiff's proposed findings of fact and law entitled "Misrepresentation/Inducement" (bolding omitted), which appears to encompass theories of negligent and intentional misrepresentation as well as the implied duty of good faith and fair dealing associated with contract formation. *See Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 139 (1989) (discussing duty of good faith and fair dealing). The plaintiff prevailed on other claims, however, including violation of the CPA, and revocation of acceptance under the Uniform Commercial Code, which, as discussed more fully below, support the relief ordered by the trial court. Accordingly, the error, if any, is harmless. *Cf. Handley v. Town of Hooksett*, 147 N.H. 184, 189-90 (2001) ("This court will sustain the decision of the trial court if there are valid alternative grounds to support it."). For similar reasons, we need not address the defendant's arguments regarding contributory negligence and the economic loss doctrine, as they are irrelevant to the statutory claims that support the relief granted.

The defendant next contends that the trial court failed to apply the correct measure of damages. Specifically, he contends that the measure of damages should have been the difference between the price the plaintiff

paid and the value of what he received. He then argues that because the plaintiff failed to prove the value of what he received, he is not entitled to any damages. He concludes that the trial court erred in awarding the plaintiff the full purchase price plus shipping costs. We disagree.

We first note that the defendant's argument is premised upon an assumption we decline to adopt. The defendant correctly points out that the trial court's "decision fails to cite the authority pursuant to which the trial court awarded damages." He then asserts that we "should find that the trial court elected to award damages pursuant to [the CPA]" because the trial court awarded attorney's fees, which are not available under any of the other claims brought by the plaintiff. The award of attorney's fees does not compel that conclusion, however.

We have held that "RSA 358-A:10 does not require a showing of actual damages for the claimant to be awarded the statutory minimum [of $1,000 in damages] and attorney's fees." *Becksted v. Nadeau*, 155 N.H. 615, 621 (2007). We, therefore, cannot conclude that an award of actual damages is a prerequisite to an award of attorney's fees. While the statute mandates an award of at least statutory damages to a prevailing claimant, *see id.*, we need not address the trial court's failure to award such damages because the plaintiff has not appealed that issue.

The terms of the remedy awarded make clear that it was not intended to be an award of actual damages. *Cf. Copeland v. Reynolds*, 86 N.H. 110, 111 (1933) (where the plaintiff, in a prior case, "had an election between two remedial courses and the inquiry is which one she chose," the court examined "the effect of the judgment in showing what her choice was"). The trial court ordered:

> Defendant shall refund to plaintiff the purchase price of $6000.00 plus shipping cost of $1298.00. Plaintiff shall return the goods purchased to the defendant upon defendant's arrangement for return shipment, payment of same and payment of judgment. If no arrangements are made for return shipment within 60 days, defendant shall forfeit ownership of the merchandise and it may remain in plaintiff's ownership and possession to be disposed of or used at plaintiff's discretion.

The remedy is clearly one of rescission. *See id.* (noting that "recovery of the payment made is more decisive" as to the form of remedy elected and "necessarily implies a rescission").

"Rescission is an equitable remedy," *Mooney v. Nationwide Mut. Ins. Co.*, 149 N.H. 355, 357 (2003) (quotation omitted), "which restores the injured party to the position occupied before the transaction." *Patch v.*

*Arsenault*, 139 N.H. 313, 318 (1995). Although the district court "does not have a general grant of equitable power" it does have such powers as are "conferred by statute." *Matte v. Shippee Auto*, 152 N.H. 216, 223 (2005) (quotations omitted). While the CPA provides that a claimant may bring an action for equitable relief in addition to damages, we have never addressed whether rescission is a remedy provided for, or available under, that statute. *Cf. Schwartz v. Rose*, 634 N.E.2d 105, 109 (Mass. 1994) (affirming judgment that included rescission as a remedy for a violation of Massachusetts consumer protection statute). We need not reach that issue here, however, as the remedy is available under another claim upon which the plaintiff prevailed. *See Handley*, 147 N.H. at 189-90 (decision of trial court will be upheld "if there are valid alternative grounds to support it"). Specifically, we conclude that the remedy is sustainable as enforcement of a revocation after acceptance under the Uniform Commercial Code. *See Werner v. Montana*, 117 N.H. 721, 729 (1977) (noting that "other courts have held, and commentators agree, that rescission and revocation of acceptance amount to the same thing under the Uniform Commercial Code, particularly since cancellation is a remedy available to a buyer who has established revocation of acceptance").

The trial court granted a proposed ruling that "[t]he Plaintiff's actions were acceptable under RSA 382-A:2-608." That section provides for revocation of acceptance of nonconforming goods by a buyer under certain circumstances. RSA 382-A:2-608 (1994). "Once a valid revocation of acceptance has been made, the proper measure of damages is found in RSA 382-A:2-711." *Sanborn v. Aranosian*, 119 N.H. 969, 970 (1979). That section "provides that a buyer who justifiably revokes acceptance may recover so much of the price as has been paid." *Id.* (quotation omitted). It also provides, in part, that the buyer "has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody." RSA 382-A:2-711(3) (1994).

 The UCC also states that a buyer who justifiably revokes acceptance has "the same rights and duties with regard to the goods involved as if he had rejected them." RSA 382-A:2-608(3). Therefore, where the buyer has physical possession of the goods, and after the seller has repaid the purchase price, the non-merchant buyer's only duty with respect to the goods is to "hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them." RSA 382-A:2-602(2)(b) (1994). The remedy ordered here — return of the purchase price to the plaintiff and return of the Fiat to the defendant upon his payment of the

judgment and his arrangement for return shipment and payment for the same — is entirely proper under the UCC.

■■ ■ Finally, the plaintiff cross-appeals, arguing that the trial court erred in failing to find a willful or knowing violation of the CPA and failing to award between two and three times the amount of damages. The CPA provides:

> If the court finds for the plaintiff, recovery shall be in the amount of actual damages or $1,000, whichever is greater. If the court finds that the use of the method of competition or the act or practice was a willful or knowing violation of this chapter, it shall award as much as 3 times, but not less than 2 times, such amount.

RSA 358-A:10, I. Thus, the amount to be doubled or trebled is the amount of damages awarded, whether actual or nominal. As noted previously, the trial court did not award either actual or nominal damages. The purchase price and shipping costs refunded to the plaintiff were not damages subject to being doubled or trebled under the CPA, but rather were an integral part of the remedy of rescission. *Cf. Schwartz*, 634 N.E.2d at 108 (concluding that where rescission is ordered for a willful and knowing violation of the Massachusetts consumer protection statute, "the amount of purchase money refunded to the buyer [is not] included in the 'damages' subject to multiple assessment under the statute"). Because the trial court awarded no damages that could be multiplied under the CPA, we need not address whether it erred in failing to find a willful or knowing violation of that statute.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.