# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0344, <u>Martin Woodford and Jennifer Woodford, Trustees of the Woodford Family Trust v. Bradford A. Knight d/b/a Knight Custom Homes</u>, the court on April 7, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Bradford A. Knight d/b/a/ Knight Custom Homes, appeals and the plaintiffs, Martin Woodford and Jennifer Woodford, Trustees of the Woodford Family Trust, cross-appeal rulings of the Superior Court (<u>Anderson</u>, J.) resolving a dispute arising out of alleged deficiencies in a custom home that the defendant constructed and sold to the plaintiffs. We affirm.

    I.    <u>Background</u>

The following facts are supported by the record. The plaintiffs and the defendant executed a purchase and sale agreement in October 2015, whereby the defendant agreed to construct a dwelling in the Victoria Ridge subdivision in Amherst and sell it to the plaintiffs. After moving into the home in October 2016, the plaintiffs observed problems including gapping in the hardwood floors, gapping of countertops, floor squeaking, loose grout in the tile flooring, the propane tank pit filling with water, and problems with the HVAC system.

After the defendant disclaimed responsibility for the problems, the plaintiffs hired an engineer, John Turner, to inspect the home. In his report, Turner identified several areas of concern including issues with the construction of the foundation and with the floor and roof framing. As a result, the plaintiffs hired a structural engineer, Joaquin Denoya, to further investigate the structural components of the home. In his initial report, Denoya identified several potential concerns, recommended a full structural analysis, and provided a rough cost of repair estimate. The plaintiffs also hired an expert in flooring inspection, David Buss, to examine the flooring in the home and he reported that the hardwood and tile flooring had been installed improperly.

In June 2017, the plaintiffs sent a notice letter and notice of warranty claims to the defendant pursuant to RSA chapter 359-G. In early July, the plaintiffs hired a landscaper to cut down trees on the property. On July 13,

the defendant emailed the plaintiffs' counsel with the heading "Cease and Desist Order," explaining that the plaintiffs' tree-cutting activities had violated the Victoria Ridge covenants and that he would be pursuing legal action, and recommending that the plaintiffs start researching the cost of "sourcing 80+ trees, crane service etc." The defendant also hired a structural engineer, Linda McNair Perry, who authored a preliminary report reviewing the reports submitted by Turner and Denoya, in which she disagreed with both experts' conclusions, although she stated that she had not inspected the residence nor done an independent structural analysis.

In early 2018, the plaintiffs had Denoya conduct a full structural engineering analysis. In his report, Denoya analyzed the foundation, basement columns, floor joists and beams, and the roof framing system, and prepared a conceptual plan to be used to estimate the cost of repair. The plaintiffs also had Turner investigate problems they were having with water pooling in the backyard. Turner's report detailed the reasons he believed the drainage system needed to be replaced.

In May 2018, the plaintiffs sued the defendant for: (1) breach of contract/implied warranty of workmanlike construction; (2) breach of contract/express warranties; and (3) violation of the New Hampshire Consumer Protection Act, RSA chapter 358-A (CPA). The defendant counterclaimed for breach of the Victoria Ridge covenant pertaining to tree cutting. Following a thirteen-day bench trial, which included a view, the court found in favor of the plaintiffs on the breach of contract claims, in favor of the defendant on the CPA claim, and in favor of the plaintiffs on the defendant's counterclaim. Both parties sought reconsideration. The trial court denied the defendant's motion, and granted in part and denied in part the plaintiffs' motion. This appeal and cross-appeal followed.

In reviewing a trial court's decision rendered after a trial on the merits, we will uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. O'Malley v. Little, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id. We review the trial court's application of the law to the facts de novo. Id.

II. Defendant's Appeal

The defendant first argues that the trial court erred when it denied his counterclaim alleging that the plaintiffs violated a Victoria Ridge covenant

when they cut down trees in 2017 without the required approval. The covenant provided:

> No "clear cutting" of the lots will be allowed. No more than 15 trees per year can be removed with out [sic] the developers [sic] written consent. Replacement of any trees (above 15) cut will be at the lot owners [sic] expense (same approx. size). It will be at the developers [sic] sole discretion as to approvals on tree cutting.

In rejecting the defendant's counterclaim, the trial court reasoned that "'provisions in a contract which require waiver or modification of contract provisions to be in writing cannot completely restrict the parties' ability to orally alter the contract.'" (Quoting Prime Financial Group, Inc. v. Masters, 141 N.H. 33, 37 (1996)). Accordingly, the trial court determined that it "must look to the intent of the parties to determine whether they intended to waive the in-writing provision and give effect to their intent," noting that the waiver of an in-writing provision "'may itself be implied from the conduct of the parties.'" (Quoting id.).

The trial court found that in December 2015 the plaintiffs discussed with the defendant which trees on the property needed to be cut to accommodate the house and yard. Plaintiff Martin Woodford testified that when he and his wife spoke with the defendant about the yard, the defendant recommended that they cut the trees back to a rock wall at the edge of the property. At that time, the plaintiffs chose not to cut all the way to the rock wall because they did not want to be responsible for the landscaping that such an extensive cutting would require. Martin testified that when they undertook tree removal in July 2017, he believed they had the consent of the defendant based on the defendant's prior recommendation that they cut back to the rock wall.

The court found credible Martin's testimony that the defendant "not only agreed but encouraged" the plaintiffs to cut trees back to the rock wall, and it found that the defendant did nothing to limit or revoke his consent in the intervening years. The court did not find credible the defendant's testimony in which he denied that he encouraged the plaintiffs to cut back to the rock wall. The court also noted that a promotional video for the Victoria Ridge subdivision introduced at trial "reflect[ed] poorly" on the defendant's credibility. In that video the defendant, walking into the back yard of another lot in the subdivision, which was a large grassy area bordered by a rock wall, states:

> [W]e had a lot of trees growing all the way up and down around here. It was a much closer area. They opted to have a really big yard for their kids, so we actually took down about 200 trees all the way around the outside of the yard to give a nice big yard. Their plan is to put a pool in back here, and obviously, there's plenty of room for all that.

3

Martin testified that the rock wall in the video is the same rock wall that extends into and borders his property.

On appeal, the defendant argues that his "assertions that he never approved nor would approve the subject clear cutting should have been what the [trial court] relied upon," and that "[a]ny reasonable person would have concluded [that his] testimony was more reliable." However, as the trial court reiterated on reconsideration, in rejecting the defendant's counterclaim it relied on Martin's "credible testimony" that the defendant never expressed any resistance to the plaintiffs cutting trees at a later date back to the rock wall for a bigger yard. We defer to the trial court's judgment on resolving conflicts in the testimony and measuring the credibility of witnesses. Little, 170 N.H. at 275. In light of that deference, we affirm the trial court's determination that the parties intended to waive the in-writing provision as it pertained to cutting trees to the rock wall. Accordingly, we need not address the defendant's arguments that the court's additional reasons for reaching the same conclusion were erroneous.

The defendant next argues that the trial court erred "when it determined plaintiffs' experts to have provided lawful expert opinion sufficient for plaintiffs to succeed." (Capitalization and bolding omitted.) To the extent the defendant is asserting that the plaintiffs' experts did not meet the legal standards governing expert testimony, because the defendant did not contest their qualifications as experts at trial, this argument is deemed waived. See In re Eduardo L., 136 N.H. 678, 689 (1993); State v. McMinn, 141 N.H. 636, 642 (1997) (the general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review). To the extent the defendant is asserting that the trial court should have credited different testimony than it did, as the trier of fact the trial court was free to accept or reject any expert's testimony, in whole or in part. See Appeal of N.H. Elec. Coop., 170 N.H. 66, 74 (2017). As the trial court explained, "it found multiple witnesses credible with respect to some issues and non-credible with respect to other issues," it "assessed the credibility of witnesses separately with respect to different issues depending upon its own observation of the witnesses' demeanor when speaking about different areas," and it "considered whether accompanying exhibits or other witnesses supported each witness['s] testimony."

More specifically, the defendant argues that the plaintiffs failed to provide expert testimony sufficient to prove that the roof and the foundation walls "did not meet code." (Capitalization and bolding omitted.) Regarding the roof, although the defendant asserts that the trial court's order "inexplicably concluded that by a preponderance of the evidence code violations exist in the roof structure," the court in fact made detailed findings on this issue. These findings included that: the plaintiffs' expert "unequivocally determined that

4

code violations existed in each [individual roof] section"; the expert "identified the specific violations . . . and included both a calculation package and citations to the relevant code provisions"; and there was "nothing in the record to support" the defendant's position that the expert's opinion was "somehow inadequate or incomplete."

Regarding the foundation walls, the defendant points to conflicting expert testimony to assert that the trial court erred in determining that they do not meet code. However, the trial court expressly found that the code provisions the defendant's expert used to assess the foundation walls "required the rebar to be installed in a specific manner that differs from the way [the defendant] installed it" and that the defendant's expert was "not . . . credible in her testimony that she believe[d] the walls meet code." We have reviewed the record and conclude that it supports the trial court's findings addressing both the roof and the foundation walls. Accordingly, we find no error.

In addition, the defendant challenges the trial court's determination of damages in three areas — the foundation drain, the flooring, and damages "based on conceptual repair plans and an incomplete structural analysis." (Capitalization and bolding omitted.) In reviewing damage awards, we view the evidence in the light most favorable to the prevailing party, and will overturn an award only if we find it to be clearly erroneous. McNeal v. Lebel, 157 N.H. 458, 466 (2008).

The gist of the defendant's argument regarding the foundation drain appears to be that the trial court ordered the defendant to pay damages for repair costs that it erroneously attributed to him. According to the defendant, there was "no proof" that the sump pump was in constant operation, and the trial court "inexplicably found [the defendant's] installation of the sump pump to partially contribute" to the plaintiffs' water problem. However, the trial court's order clearly stated that it found credible Martin's testimony that the sump pump was operating "24/7" and that the defendant "admitted at trial that he departed from the design plans and dug a deeper foundation than the parties had agreed on."

With regard to the flooring, the defendant argues that the trial court erroneously "flipped flopped" when it ruled on reconsideration that the defendant was ten percent liable for issues with the hardwood flooring and tile flooring installation. We disagree. The trial court simply acknowledged that it had mistakenly failed to consider credible testimony that the defendant's "installation of the floor in an environment that was not temperature controlled contributed to the deficient end result." Given that failure, the court corrected itself and ruled that the plaintiffs were entitled to ten percent of the total costs to repair the hardwood floor and the defects in the tile flooring.

5

Finally, the defendant argues that the trial court erred when it awarded damages "based on incomplete speculative expert reports and estimates based on conceptual plans." The court, however, accepted credible expert testimony "that conceptual repair plans are not only adequate for creating cost of repair estimates, but they are typically used in the industry for this purpose."

We have reviewed the record in the light most favorable to the plaintiffs on each of the defendant's challenges to damages set forth above and conclude that the trial court's award is not clearly erroneous. See id. Accordingly, we affirm.

III.    Plaintiffs' Cross-Appeal

In their cross-appeal, the plaintiffs argue that the trial court erred by denying their CPA claim. They assert, contrary to the trial court's findings, that the defendant made numerous "material misstatements which were individually and collectively unfair and deceptive."

The trial court's findings of fact and rulings of law will be upheld unless they lack evidentiary support or constitute a clear error of law. Beer v. Bennett, 160 N.H. 166, 168-69 (2010). Pursuant to RSA 358-A:2 (2022), it is "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." Although RSA 358-A:2 is broadly worded, not all conduct in the course of trade or commerce falls within its scope. Fat Bullies Farm, LLC v. Devenport, 170 N.H. 17, 24 (2017). An ordinary breach of contract claim does not violate the CPA. State v. Moran, 151 N.H. 450, 453 (2004).

As the trial court stated, the "essence" of the plaintiffs' CPA claim was that the defendant "inflated his qualifications and represented himself as a superior builder, and then failed to construct a quality home for them." The court found, however, that many of the plaintiffs' claims with respect to the defendant's alleged poor workmanship were "unfounded" and "many of the issues [the plaintiffs] complained of were caused, in part, by [their] own actions." Accordingly, the trial court found that the plaintiffs' claims regarding the quality of the home did not rise to "anything more than an ordinary breach of contract claim." Because the record supports the trial court's finding, we affirm. See Barrows v. Boles, 141 N.H. 382, 390 (1996) (an ordinary breach of contract claim does not present an occasion for the remedies under the CPA); State v. Sideris, 157 N.H. 258, 262 (2008) (whether the defendant's conduct was, in fact, unfair or deceptive in violation of the CPA, as opposed to an ordinary breach of contract, was a matter for the factfinder).

Finally, to the extent the plaintiffs suggest, in passing, that the trial court erred by not awarding them attorney's fees with respect to their breach of

contract claims, complaints about adverse rulings without developed legal argument are insufficient to warrant appellate review.  See Skinny Pancake-Hanover v. Crotix, 172 N.H. 372, 380 (2019).

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**