# United States Court of Appeals
## For the First Circuit

No. 17-1898

PETER HIAM,

Plaintiff, Appellant,

BROOKE HUTCHENS,

Plaintiff,

v.

HOMEAWAY.COM, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

John C. Traficonte for appellant.
Jonathan M. Albano, with whom Amanda V. McGee and Morgan, Lewis
& Bockius LLP were on brief, for appellee.

April 12, 2018

**KAYATTA**, <u>Circuit Judge</u>.  Duped into parting with thousands of dollars to reserve a vacation rental property in Belize that apparently did not exist, plaintiff Peter Hiam sued the owner of the website on which he found the ersatz tropical villa, claiming that the website's guarantee misled him.  The district court granted summary judgment to the website's owner, HomeAway.com, Inc. ("HomeAway").  On appeal, Hiam argues that the district court incorrectly applied Massachusetts consumer protection law.  Finding no error in the judgment, we affirm.

## I.

Since we are reviewing an order granting summary judgment to HomeAway, we recite the facts in the light most favorable to Hiam, the nonmoving party.  <u>Walsh</u> v. <u>TelTech Sys., Inc.</u>, 821 F.3d 155, 157-58 (1st Cir. 2016).  Hiam enlisted the help of his adult son, Christopher, to plan a family vacation for the end of 2014.  In April 2014, Christopher (on behalf of his father) checked for possible opportunities on VRBO.com, a website owned and operated by HomeAway.  The parties agree that VRBO.com (short for "vacation rentals by owner") is a website-based business that allows property owners to advertise their vacation rentals to the public.  VRBO.com acts like a searchable online bulletin board; it allows property owners to list their properties, but HomeAway does not itself own or manage any properties, nor does it make itself a party to any contracts between property owners and renters.

After browsing VRBO.com's offerings, Christopher identified a promising option purportedly located in Placencia, Belize.  The "Jewels of Belize" estate advertised itself as a beachfront property with room for fourteen people, a private chef, transportation around Belize, and other amenities.  Communicating at first through the VRBO website and then directly by email with a purported representative from the estate, Hiam and his son decided to book the property for a one-week period at the end of 2014 into early 2015.  The total cost for the rental was $46,565, which Hiam sent to the purported proprietors in two equal installments paid in April and October of 2014.  Silence then ensued, and Hiam shortly thereafter realized he had been taken.  The Jewels of Belize, it appears, did not even exist.

In December of 2014, Hiam directed his son to contact HomeAway for help.  Two months later, HomeAway customer service informed the Hiams that HomeAway removed the listing for the property from the VRBO site "because [HomeAway was] uncertain of the availability of the property" and because no response had been received from the owner.  Nonetheless, HomeAway told the Hiams that it had concluded that the property was real and legitimate, and offered them no further assistance.  By this point in time, HomeAway had received customer service inquiries from Brooke Hutchens and two other unnamed individuals, each of whom claimed that the Jewels of Belize had similarly defrauded them of thousands of dollars.  And

previously, in August 2014, other individuals had written in to alert HomeAway that the listing was "a totally bogus scam" and depicted a property located on a Caribbean island.

At the time, HomeAway maintained a limited refund policy called the "Basic Rental Guarantee" (the "Guarantee"). We attach a copy of the Guarantee as an appendix to this opinion. The Guarantee offered a maximum $1000 refund to customers who fell victim to "Internet Fraud," as determined and defined by HomeAway, but only when customers satisfied a series of conditions and requirements. To qualify, the customer needed to have been a "Registered Traveler" within the meaning of the Guarantee's terms, have paid for the rental through a covered payment method (excluding wire transfer services like Western Union), have been denied a refund from the payment provider and the property owner, and have reported the alleged fraud to HomeAway within just seven business days of the first event giving rise to the refund request. Additionally, the $1000 refund was only payable if HomeAway determined, in its "reasonable discretion," that the complained-of listing constituted "Internet Fraud," meaning it was "fictitious or illegitimate" because the property did not exist or because it was advertised with the intent of defrauding travelers.

Hiam does not seek the $1000 refund offered by the Guarantee. Rather, he claims that the Guarantee caused him to lose $46,565 by misleading him into believing that HomeAway made reasonable efforts to keep fraudulent listings off its site. And because it seems

- 4 -

that HomeAway does nothing to check out offerings before posting them, Hiam argues that HomeAway is liable for common law fraud and for engaging in unfair or deceptive trade practices under Massachusetts' Chapter 93A. Mass. Gen. Laws ch. 93A, § 2(a) ("Chapter 93A"). The district court concluded as a matter of law that the Guarantee was not deceptive or fraudulent in the manner alleged, and disposed of the three counts in Hiam's complaint that hinge on accepting his construction of the Guarantee as a deceptive representation.[1] Hiam v. HomeAway.com, Inc., 267 F. Supp. 3d 338, 352 (D. Mass. 2017). Hiam appeals this ruling.[2]

## II.

### A.

Hiam's arguments on appeal train principally on the use of the word "guarantee" in the title of the "Basic Rental Guarantee." The pivotal question, one we consider de novo, is whether under Massachusetts law we should construe the use of the word "guarantee" as a representation or warranty by HomeAway to its users that some degree of pre-screening or verification of listings takes place.

---

[1] Counts II and VII arise under Chapter 93A, while count IV sounds in common law fraud. As Hiam presented them to the district court, all three counts rest on the contention that the Guarantee makes the representations or promises he alleges.

[2] Hiam does not appeal the district court's grant of summary judgment as to the other counts in his complaint, or as to arguments within his appealed counts that do not involve the Guarantee. Although Hiam was joined by a co-plaintiff, Brooke Hutchens, below, she has not filed a notice of appeal to challenge the district court's grant of summary judgment on her claims under Colorado law.

Hiam argues that the answer is yes, but this argument fails in the starting blocks because there is no language at all in the Guarantee that makes any such representation or warranty. The document simply establishes a process for obtaining a refund of up to $1000, subject to various conditions. The document also references a separate program in which, for a fee, HomeAway offers the ability to participate in a broader refund plan that covers more risks and pays up to $10,000. The only mention at all of any screening whatsoever by HomeAway takes the form of a condition to payment; that is, HomeAway will not pay a refund claim unless, among other things, the "listing is subsequently determined to be, in HomeAway's reasonable discretion, fictitious or illegitimate." In other words, when a qualified user timely makes a claim for a limited refund, HomeAway at that time checks out the listing and pays the specified refund if it determines in its reasonable discretion that the offering is illegitimate.

Nothing in this arrangement implies that HomeAway checked out the listing before receiving a claim under the Guarantee. And if there were any doubt on this point, the website's terms and conditions (by which all "Registered Traveler[s]" agree to be bound) would eliminate it. HomeAway states in those terms and conditions that "[w]e have no duty to pre-screen content posted on the Site by members, travelers or other users." HomeAway also "specifically disclaim[s] any and all liability arising from the alleged accuracy

- 6 -

of the listings" and advises customers that they are "solely responsible for verifying the accuracy of . . . content and descriptions."

Undaunted by the force of the Guarantee's actual terms, Hiam points to regulations adopted under Chapter 93A. See 940 Mass. Code Regs. 3.01 & 3.03. Hiam construes these regulations as transforming the word "guarantee" as used in any consumer advertising into some type of "representation" about "some characteristic of the product or service." In the case of VRBO.com listings, Hiam says that the implicit "characteristic" of the products offered on the site is their reasonably verified authenticity as a result of VRBO.com's self-policing.

Having reviewed the subject regulations de novo, Smith v. Jenkins, 732 F.3d 51, 70-71 (1st Cir. 2013), we find nothing that deems every "guarantee," no matter how worded, to be a representation of some fact concerning the guaranteed product. To the contrary, one subsection of the regulations describes that an additional duty by a seller is triggered "[w]here guarantees are employed in such a manner as to constitute representations of material facts." 940 Mass. Code Regs. 3.03(7). That wording plainly presumes that the word "guarantee" can be used in some other manner (such as, for example, to assure a refund in the event the consumer is not satisfied).

Chapter 93A regulations identify several characteristics that a guarantee should have in order to avoid being deceptive: it

- 7 -

should "clearly and conspicuously disclose" the "nature and extent of the guarantee," including "[w]hat product or part of the product" is covered, what part of the product is excluded, the "duration of the guarantee," and what a claimant "must do before the guarantor will fulfill his obligation under the guarantee."  940 Mass. Code Regs. 3.03(1).  Further, it must clearly identify the guarantor and disclose "exactly what the guarantor undertakes to do under the guarantee."  Id. 3.03(1)(b).  In turn, and tellingly, the regulation lists a "refund" as an example of what a guarantor may undertake to do.  Id.

The HomeAway Guarantee performs each of these functions. It clearly discloses that the "nature and extent of the guarantee" is a conditional limited refund of 50% of the amount paid, up to $1000. Any amount lost above that is excluded from coverage.  Section 4.9 of the Guarantee specifies the duration of the guarantee, requiring the consumer to notify HomeAway within seven business days of the "first event giving rise to" the reimbursement request.  Section 1 requires the claimant to do a number of things before becoming eligible under the Guarantee, including requesting and being denied a refund from the property owner.  The Guarantee lists these prerequisites in bullet points in a section that begins, "You qualify for the Program if you do all of the following."  Subsequent sections add further detail to those requirements.  Finally, the Guarantee explains exactly what the guarantor will do upon receiving a qualifying

complaint:  pay up to $1000 if funds are lost as a result of "Internet Fraud," a defined term.

We agree with the district court that a factfinder could determine that HomeAway implicitly promises to conduct some kind of after-the-fact investigation before denying an otherwise qualifying refund claim.  Hiam, 267 F. Supp. 3d at 352.  We also share Hiam's bewilderment that, after claiming to investigate the listing, HomeAway concluded that the Jewels of Belize property was legitimate. HomeAway could not even reach the putative owners, and by the time it responded to Hiam, it had received the complaints of several others who, during the same timeframe, lost money to the fraudsters and complained to customer service or otherwise wrote in to alert HomeAway that the listing was a "bogus scam booking."  But Hiam does not argue that he otherwise qualified for a refund (i.e., that he was a "Registered Traveler" who made a timely claim, etc.).  Nor does he argue that any deficiency in HomeAway's investigation of his complaint otherwise caused him any harm.  Hiam also expressly disavows any attempt to claim a refund under the actual terms of the Guarantee. He also failed to develop in the district court or on appeal, in other than a fleeting and cursory manner, any contention that HomeAway owed him a duty of care in investigating the complaints of others and caused him harm by breaching that duty.  CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1525–26 (1st Cir. 1996) (arguments not made before the district court cannot be raised for the first time

on appeal); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (arguments made in only a perfunctory manner are deemed waived).

In sum, Hiam's claim concerning the effect of HomeAway's Guarantee is limited, and so too is our holding in response: we agree with the district court that the Guarantee itself is not misleading or deceptive under Massachusetts law in the manner alleged by Hiam.

**B.**

Hiam also sought to hold HomeAway liable under a regulation that prohibits any "seller of travel services" from making deceptive or misleading representations. 940 Mass. Code Regs. 15.02 & 15.03. The district court rejected this claim because it decided that HomeAway was not a "seller of travel services" as defined in the applicable regulations. 267 F. Supp. 3d at 348. The district court also determined that even if the regulations applied in this instance, they would be preempted by Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. 267 F. Supp. 3d at 348–49.

Hiam argues that HomeAway "arranges" travel services, so it fits the regulation's definition of a "seller of travel services." 940 Mass. Code Regs. 15.02. And as a seller of travel services, Hiam argues, HomeAway violated the regulation (and therefore Chapter 93A) by "representing to Peter Hiam that the fictitious property . . . was

'legitimate,'" a false representation made in contravention of 940 Mass. Code. Regs. 15.03.[3]

We have already rejected Hiam's argument that the Guarantee itself entailed any representation concerning the authenticity of listings. So we assume that Hiam is referring to the specific representation that "the property is legitimate" made by HomeAway in an email response to Hiam's customer service complaint. While the record would adequately support a finding that this after-the-fact representation was false, Hiam says nothing at all regarding how such an after-the-fact misrepresentation caused him any injury, nor does he develop any argument that he can prevail without proof of some injury. See Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc., 840 N.E.2d 526, 533 (Mass. 2006) (recovery under Chapter 93A's private right of action requires a showing of loss). Thus, without deciding whether HomeAway is a "seller of travel services" or whether the CDA would apply if so, we affirm the grant of summary judgment as to this claim.

## c.

Hiam's final grievance on appeal is that he was unfairly ambushed by the district court's resolution of the merits of his claims, given that HomeAway sought summary judgment on the grounds

---

[3] Hiam's opening brief also says that "other violations were also identified" in his complaint, but the brief does nothing to explain what they were or why they are violations of the regulations beyond cross-referencing his complaint. Any such claims are therefore waived. See Zannino, 895 F.2d at 17.

- 11 -

that the CDA, which immunizes websites from liability for content posted by third parties, barred his suit.  We see no such ambush.

HomeAway's request to resolve the entire case based on CDA immunity reasonably put Hiam on notice of the need to show that he had viable claims that did not rely on the mere maintenance of the website or on the actions of third parties, but rather relied, in Hiam's words, on "HomeAway's own actions and representations."  See Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007) (interactive computer service providers remain liable for their own speech).  And in opposing summary judgment, Hiam did, "in an abundance of caution," marshal his ammunition in support of the merits of his claims, submitting a statement of material facts and a memorandum that used the merits of his claims as reasons for rejecting CDA immunity.  At that point in the proceedings, discovery had come to a close, save for one deposition of a HomeAway representative whose statements may have shed light on HomeAway's investigatory activities generally.  Hiam filed no request under Federal Rule of Civil Procedure 56(d) to obtain more discovery before the court ruled on the summary judgment motion.  Even on appeal, Hiam points to no additional evidence or discovery that could support his reading of the Guarantee or show that he was injured by HomeAway's after-the-fact assertion that the property was legitimate.  In short, nothing about the manner in which the district court proceeded in deciding the summary judgment motion caused Hiam any harm.

## III.

The judgment below is <u>affirmed</u>.[4]

---

[4] We dismiss as moot Hiam's argument on appeal that the district court improperly resolved the factual question of whether Hiam paid for his would-be rental through a payment type covered by the Guarantee.  Even if the district court erred in concluding that Hiam made a disqualifying "wire transfer," 267 F. Supp. 3d at 353, Hiam is not seeking a refund under the terms of the Guarantee, and in any event, he has conceded that he failed to make a timely request under the Guarantee.  We similarly have no need to opine on HomeAway's contention that Hiam's claims, were they otherwise valid, would be preempted by the CDA.

# Terms and Conditions
# Basic Rental Guarantee from HomeAway

When you request reimbursement under, or register your vacation rental for, the Basic Rental Guarantee from HomeAway (the "Basic Program"), you agree with, accept and are subject to these terms and conditions (the "Terms").  As detailed below, the Basic Program is intended to provide protection against Internet Fraud (as defined below) for 50% of the money you pay for deposits or rental fees up to a maximum of one thousand dollars ($1,000).  The HomeAway Carefree Rental Guarantee is a separate program offered for a fee that provides up to ten thousand dollars ($10,000) of protection against the following: (i) Internet Fraud; (ii) Wrongful Denial of Entry; (iii) Material Misrepresentation; and (iv) Wrongful Deposit Loss, in each case as detailed and/or defined in a separate agreement.  All amounts in these terms are in U.S. dollars.  The Basic Plan does not require that you register your rental prior to making payment to the advertiser.

## 1. General Program Guidelines.

You qualify for the Program if you do all of the following:

- Find, inquire about, and rent a vacation rental property advertised in the HomeAway, Inc. community of websites HomeAway.com, GreatRentals.com, CyberRentals.com, VRBO.com, VacationRentals.com, FloridaVacations.com, MexicoVacations.com, Holiday-Rentals.co.uk, HolidayRentals.fr, OwnersDirect.co.uk, FeWo-direkt.de, Homelidays.com, or Abritel.fr (collectively, "HomeAway" or the "HomeAway Sites");
- Register for the Basic Program by submitting a Basic Rental Guarantee Reimbursement Request Form.  Such registration being hereinafter referred to as a "Registration". IN ORDER TO BE A REGISTERED TRAVELER UNDER THE PROGRAM, THE LISTING OF THE SUBJECT RENTAL PROPERTY MUST BE AN ACTIVE LISTING ON A HOMEAWAY SITE AT THE TIME OF PAYMENT, AND YOUR PAYMENT TO THE PROPERTY OWNER OR MANAGER MUST BE RECEIVED BY THE PROPERTY OWNER OR MANAGER BEFORE HOMEAWAY HAS SENT YOU NOTICE (IF ANY) THAT THE SUBJECT RENTAL PROPERTY IS INELIGIBLE FOR PARTICIPATION IN THE PROGRAM.  A traveler who properly pays and completes the Registration is hereafter referred to as a "Registered Traveler";
- Send money to the property owner or manager via credit card, PayPal, check or direct bank transfer to secure the booking or reservation of the property;
- Incur a loss of funds in accordance with these Terms;
- Notify HomeAway of your loss within the required time periods set forth below;
- Are denied reimbursement for your loss of funds from (i) the property owner or manager, and (ii) PayPal or your bank, payment provider or credit card issuer (as applicable); and
- Submit a completed HomeAway Basic Rental Guarantee Request for Reimbursement Form (the "Reimbursement Request Form") within the required time periods set forth below.

**2. Protections Provided**.

Subject to the restrictions and limitations set forth in these Terms, the Basic Program provides aggregate protection to Registered Travelers under the Basic Program equal to the lesser of one thousand dollars ($1,000) or fifty percent (50%) of the amounts actually paid by a Registered Traveler to a property manager or owner where such funds are lost or misappropriated as the result of Internet Fraud. "Internet Fraud" is defined as a deposit or payment by a Registered Traveler for a vacation rental that is listed on a HomeAway Site where such listing is subsequently determined to be, in HomeAway's reasonable discretion, fictitious or illegitimate because the holiday rental property (i) does not exist as a property available for rent, or (ii) was advertised by the advertiser with the intention of defrauding travelers and to lead the traveler to believe the advertised property was available as a rental property.

**3. Illustrative Examples of Losses of Funds Not Protected.**

The following are illustrative examples of losses of funds that the Basic Program DOES NOT protect against, as determined in the reasonable judgment of HomeAway:

- Any deposits or payments for a vacation rental that are not refunded or returned because the Registered Traveler does not comply with the property owner's or manager's policies, is in breach of the rental agreement, or as otherwise stated in the rental agreement.
- ANY DAMAGES OTHER THAN AMOUNTS ACTUALLY PAID TO OR DEPOSITED WITH THE PROPERTY OWNER OR MANAGER, INCLUDING ANY INDIRECT LOSSES, LOSS OF OPPORTUNITY, LOSS OF CUSTOM FEES, OTHER CONTRACTUAL PENALTIES, AIRFARE AND/OR ANY OTHER COST, EXPENSE, LOSS OR DAMAGE.
- Payments or deposits made to any property owner or manager via Western Union, MoneyGram, or other instant wire transfer services.
- Payments or deposits made to any property owner or manager after HomeAway has sent notice to a Registered Traveler that the subject property is not eligible for participation in the Basic Program or the HomeAway Carefree Rental Guarantee program.
- Any loss of any kind where the Registered Traveler and the property owner or manager are related to each other in any degree, or are acting in concert to defraud HomeAway.
- Any loss of funds that is caused by or results from events outside the control of HomeAway and/or the property owner or manager, including, but not limited to weather events, natural disasters or political or security threats.
- Any loss of funds except for a loss involving Internet Fraud, including, without limitation, any loss involving Wrongful Denial of Entry, Material Misrepresentation, Wrongful Deposit Loss, events that might be characterized as "renter's remorse", "bait and switch" or any objection by the Registered Traveler to the location, condition or suitability of purpose of the property, all as determined by HomeAway in its reasonable judgment. Wrongful Denial of Entry, Material Misrepresentation, Wrongful Deposit Loss are as defined in the terms and conditions of the HomeAway Carefree Rental Guarantee.

- Any deposits or payments for a vacation rental that are not refunded or returned because a Registered Traveler and the property owner or manager are in a dispute over whether a refund is due.
- Any deposits or payments to the property owner or manager in excess of $1,000.00.
- Any loss of funds related to a listed vacation rental property that exists but is the subject of a dispute over whether the property owner or manager has the authority to lease the subject property.
- Any loss of funds that is caused by the takeover or "phish" of a property owner's or manager's email account or the property owner's or manager's account on a HomeAway site.

**4. Process Requirements**.

In order to obtain any reimbursement from HomeAway under the Basic Program, a Registered Traveler must comply with the requirements set forth below. Failure to follow these requirements, or the taking of any action by any Registered Traveler without the written consent by HomeAway that impairs HomeAway's ability and/or right to mitigate any loss, or the making by any Registered Traveler of any false or misleading statement with respect to any request for reimbursement hereunder, will void eligibility for reimbursement under the Basic Program.

**4.1 Third Party Reimbursement.** If a Registered Traveler has paid money to a property owner or manager via direct bank transfer, PayPal, credit card or check, upon learning of the existence of a potential loss of funds protected under the Basic Program, the Registered Traveler must immediately contact the bank(s), PayPal or credit card issuer (as applicable) to request recovery or reimbursement of the Registered Traveler's funds (a "Chargeback"). A Registered Traveler is only entitled to receive payment from HomeAway under the Basic Program if the bank(s), PayPal or credit card issuer (as applicable) denies a Registered Traveler's request for a Chargeback. A Registered Traveler must provide HomeAway with written proof that he or she contacted the bank(s), PayPal or credit card issuer (as applicable) and that a request for a Chargeback was denied. A Registered Traveler is required to accept any settlement from the bank(s), PayPal or credit card issuer (as applicable), but may still be eligible for additional payments under the Basic Program if such settlement is for less than the maximum reimbursement amount under the applicable Plan.

**4.2 Proof of Identity.** A Registered Traveler must provide written proof of his or her identity (e.g., copy of passport, driver's license, utility bills, credit card information, etc.) as HomeAway may request in its sole discretion. HomeAway may request one or more forms of proof of identity, and any determination by HomeAway with respect to the valid existence of any proof of identity shall be made in HomeAway's reasonable discretion.

**4.3 Document the listing.** A Registered Traveler must provide written proof that the subject property was listed on one of the HomeAway Sites.

**4.4 Document the inquiry.** A Registered Traveler must provide a copy (electronic or in print) of the inquiry email verification (the "Initial Inquiry") provided by the HomeAway Site when the Registered Traveler first inquired about the subject property, and HomeAway must be able to

verify this Initial Inquiry by finding a log of this inquiry in its database.

**4.5 Document the reservation.**  A Registered Traveler must prove that he or she reached a final agreement with the property owner or manager regarding the listed vacation rental and provide HomeAway with all requested documentation of email, telephone, written or other communications with the property owner or manager regarding the rental property.

**4.6 Document all payment(s).**  If HomeAway sends the Registered Traveler a notice that a listing or property is not eligible for participation in the Basic Program, then the Registered Traveler must prove that he or she made payment via direct bank transfer, PayPal, check or credit card to the property owner or manager prior to HomeAway's transmission of such notice. A Registered Traveler must provide written documentation of all payments and refunds (partial, full and/or deposit) made to or by the property owner or manager. A Registered Traveler must prove that those payments were made prior to HomeAway's transmission of any notice that the subject property was not eligible for participation in the Basic Program or the HomeAway Carefree Rental Guarantee.

**4.8 Document the loss.**  The Registered Traveler must provide HomeAway with all requested written documentation of lost or misappropriated funds.. Further, the Registered Traveler must provide written evidence that the property owner or manager received funds from the Registered Traveler, was notified of the Registered Traveler's refund claim, and refused or failed to return or refund such funds to the Registered Traveler.  Claimants should not alter or destroy any documentation related to the lost or misappropriated funds until the matter is resolved.

**4.9 Notify HomeAway.**  The Registered Traveler must notify HomeAway within seven (7) business days of the first event giving rise to a Registered Traveler's request for reimbursement under the Basic Program by: (i) email to customer support; or (ii)  by mail to HomeAway Basic Rental Guarantee Basic Program, HomeAway.com, 1011 W Fifth Street, Suite 300, Austin, TX 78703; or (iii) by calling 1-877-228-3145 or 512-782-0805.

**4.10 File a Reimbursement Request.**  The Registered Traveler must complete, sign and submit the Reimbursement Request Form with all requested documentation to HomeAway within thirty (30) days of (i) receiving the Reimbursement Request Form or (ii) the departure date set forth in your Registration, whichever is later.  The as-submitted Reimbursement Request Form must contain the Registered Traveler's agreement that:

- Any payment available to such Registered Traveler under the Basic Program shall be payable only to the extent that the proceeds of any coverage or recovery provided by any insurance policy or any other source of recovery held or collectible by any applicant under the Basic Program is insufficient to reimburse wholly the Registered Traveler for lost or misappropriated payments made to the property owner or manager;
- If HomeAway pays for the reimbursement, reversal or chargeback that a Registered Traveler seeks from a property owner or manager, such traveler agrees that HomeAway assumes all of his or her rights against the property owner or manager and any third parties related to the payment, and may pursue such rights directly or on such traveler's behalf, in HomeAway's sole discretion; and

- Such Registered Traveler agrees to execute a general release agreement in form and substance acceptable to HomeAway, thereby releasing HomeAway from any and all claims such traveler may have arising prior to the date of the payment made by HomeAway.

**4.11 Help us help you.** For the avoidance of doubt, if a Registered Traveler requests reimbursement under the Basic Program, he or she agrees to provide to HomeAway, on a timely basis, any documentation requested to support such request. Such traveler also agrees to fully cooperate with HomeAway in all aspects of the reimbursement process. HomeAway may close without payment any reimbursement request file of a Registered Traveler who does not respond to inquiries regarding an alleged fund loss or misappropriation within specified times.

**4.12 Reimbursement process.** HomeAway will complete the processing of each request for reimbursement under the Basic Program within a reasonable time period after receipt of all requested documentation. As noted above, it is recommended that Registered Travelers who are seeking reimbursement do not discard or alter any documentation related to the reimbursement request until the matter is resolved.

**4.13  Other offers.** By registering for the Basic Program, each Registered Traveler further agrees that HomeAway may transmit its email newsletters to such person, along with other account information that may be targeted to such traveler's interests.

**5. Entire Agreement; Contact Information.** These Terms constitute the entire agreement between HomeAway and each Registered Traveler with respect to the Basic Program. Except as may be modified by these Terms, each Registered Traveler acknowledges and agrees that it is bound by the existing Terms and Conditions of Use of the HomeAway Sites. In the event of any conflict between these Terms and the Terms and Conditions of Use, these Terms will govern. If you have any questions regarding the Basic Program or these Terms, please contact us by: (i) email to customer support; (ii) by mail to HomeAway Basic Rental Guarantee Basic Program, HomeAway.com, 1011 W Fifth Street, Suite 300, Austin, TX 78703; or (iii) by calling 1-877-228-3145 or 512-782-0805.

[End of Terms]