NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

7th Circuit Court-Dover District Division
No. 2019-0328

TEATOTALLER, LLC

v.

FACEBOOK, INC.

Argued: March 10, 2020
Opinion Issued: July 24, 2020

Emmett Soldati, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), on the brief and orally, for the plaintiff.

Paul Frank + Collins P.C., of Burlington, Vermont (Stephen J. Soule on the brief); Keker, Van Nest & Peters, LLP, of San Francisco, California (Matan Shacham and Victor Chiu on the brief); and Primmer, Piper, Eggleston & Cramer, PC, of Manchester (Doreen F. Connor orally), for the defendant.
.

HANTZ MARCONI, J.  The plaintiff, Teatotaller, LLC (Teatotaller), appeals an order of the Circuit Court (Gardner, J.) dismissing its small claim complaint against the defendant, Facebook, Inc. (Facebook).  We reverse and remand.

The relevant facts follow.  Teatotaller alleged that in June 2018, Facebook "deleted [Teatotaller's] Instagram . . . account without notice."[1] Teatotaller further alleged that Facebook "sent two contradicting statements as to the reason for deletion and provided no appeal or contact to get more information."  Teatotaller also alleged that Facebook "had a duty of care to protect [Teatotaller] from an algorithmic deletion as it hampers [Teatotaller's] business" and that Teatotaller has "continue[d] to lose business and customers due to [Facebook's] negligence."  In addition to seeking $9,999 in damages, Teatotaller sought restoration of its Instagram account.[2]

Facebook moved to dismiss Teatotaller's complaint on several grounds. Pertinent to the instant appeal, Facebook argued that Teatotaller's claims are "barred under Section 230(c)(1) of the Communications Decency Act . . . , which immunizes [it] from claims that seek to hold it liable for deciding whether to publish, withdraw, postpone or alter content."  (Quotation omitted.) See 47 U.S.C. § 230(c)(1) (2012).  In addition, Facebook asserted that Teatotaller's complaint failed to establish that the trial court had personal jurisdiction over Facebook.

Teatotaller objected to the motion, urging the trial court not to accept Facebook's defense under section 230(c)(1) of the federal Communications Decency Act (CDA) at this stage of the proceedings, and asserting that the court had personal jurisdiction over Facebook pursuant to Instagram's "Terms of Use" appended to Teatotaller's objection.  In a subsequent pleading, Teatotaller asserted that its "claim against Facebook . . . stems from [its] failure to act in accordance with [the Terms of Use] in the treatment of [Teatotaller's] account and intellectual property owned."  Facebook countered that "the contract [Teatotaller] now claims it agreed to with Facebook explicitly provides

---

[1] According to Facebook, Instagram is a wholly-owned subsidiary of Facebook.  In the trial court, Facebook argued that Teatotaller had failed to allege any claims against Facebook.  The trial court apparently ruled to the contrary, and because Facebook has not cross-appealed that determination, we assume it to be correct.

[2] Because the parties have not yet litigated the issue, we express no opinion as to whether the trial court has authority to order Facebook to restore Teatotaller's Instagram account in the context of this small claim action.  See Friedline v. Roe, 166 N.H. 264, 266 (2014) (observing that the district division of the circuit court "does not have jurisdiction to resolve . . . actions in equity"); Holloway Automotive Group v. Lucic, 163 N.H. 6, 11-12 (2011) (holding that, because piercing the corporate veil is an equitable remedy, district court lacked authority to grant that remedy regardless of whether it had jurisdiction over the underlying contract case); Matte v. Shippee Auto, 152 N.H. 216, 223 (2005) (rejecting tenant's argument that district court could properly deny eviction based upon principles of equity because the district court lacks equity jurisdiction); cf. Beer v. Bennett, 160 N.H. 166, 173-74 (2010) (observing that, although rescission is an equitable remedy, and although the district court lacks a general grant of equitable power, the court had authority to order rescission under the facts of the case pursuant to the Uniform Commercial Code).

2

that [Teatotaller] will not seek to hold Facebook . . . liable in any way for [the] deletion" of Teatotaller's Instagram account.

Following a hearing, the trial court granted Facebook's motion, determining that the Terms of Use gave the court personal jurisdiction over Facebook, but also precluded Teatotaller's claims. Specifically, the court determined that, "given the language in the [Terms of Use]," Teatotaller "cannot state a claim or demonstrate any breach of contract that gives rise to a cause of action." In response to Teatotaller's subsequent motion to reconsider, the trial court stated that Facebook is entitled to immunity under the CDA for "the acts that are alleged by [Teatotaller]." This appeal followed.

On appeal, Teatotaller essentially argues that the trial court erred by: (1) ruling that Teatotaller failed to state a cause of action for breach of contract;[3] and (2) determining that its claim is barred by the CDA. We address each argument in turn.

In reviewing a trial court's decision to grant a motion to dismiss, we examine whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Pro Done, Inc. v. Basham, 172 N.H. 138, 141 (2019). We assume the facts alleged in the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff. See id. However, we do not assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Sanguedolce v. Wolfe, 164 N.H. 644, 645 (2013). We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. Id.

We apply the above-stated standard of review liberally in the instant case because it involves a small claim proceeding. RSA chapter 503 establishes a "simple, speedy, and informal procedure" for the determination of small claims. RSA 503:2 (2010); see Thomas v. Crete, 141 N.H. 708, 709 (1997). In such proceedings, formal discovery is not allowed unless specifically ordered at the pretrial hearing, Dist. Div. R. 4.5, and the rules of evidence do not apply. RSA 503:7 (2010). The pleading requirements in small claim actions are minimal. Dist. Div. R. 4.1. Substantively, a small claim complaint need only provide "a description setting forth with specificity the reason(s) the plaintiff believes that

---

[3] Although Teatotaller's original complaint alleged breach of a duty of care and negligence, on appeal Teatotaller does not argue that it alleged, or that the trial court erred by dismissing, a tort claim. Rather, in its appellate brief, Teatotaller challenges only the trial court's dismissal of its breach of contract claim. To the extent that, at oral argument, Teatotaller alluded to a claim for breach of the implied covenant of good faith and fair dealing, Teatotaller did not raise such a claim in its trial court pleadings, and did not include any arguments in its appellate brief regarding such a claim. Accordingly, we consider any appellate arguments regarding such a claim to be waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

the defendant owes money to the plaintiff" and "[t]he amount that the plaintiff claims that the defendant owes."  Id.  Thus, in a small claim proceeding, in ruling on a motion to dismiss, a trial court may consider factual allegations made by the plaintiff in a motion or objection, in addition to those in the small claim complaint.  See Dist. Div. R. 1.8(B) ("The Court will not hear any motion grounded upon facts, unless the moving party indicates in writing an understanding that making a false statement in the pleading may subject that party to criminal penalties, or the facts are apparent from the record or from the papers on file in the case, or are agreed to and stated in writing signed by the parties or their attorneys; and the same rule will be applied as to all facts relied on in opposing any motion.")

"Under New Hampshire law, a breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract."  Basham, 172 N.H. at 142 (quotation and brackets omitted).  Construing Teatotaller's complaint and objection liberally, and assuming all of the facts alleged by Teatotaller to be true, we conclude that Teatotaller has sufficiently alleged a claim for breach of contract for the purposes of its small claim action.

Teatotaller alleged that it entered into the Terms of Use with Facebook regarding Teatotaller's use of Instagram in exchange for fees.  Teatotaller further alleged that Facebook deleted Teatotaller's Instagram account in violation of the Terms of Use, causing Teatotaller to "lose business and customers," for which Teatotaller requested "damages and the restoration of [its] account."  Assuming the facts alleged by Teatotaller to be true, we hold that these allegations suffice in the context of a small claim action to state a cause of action for breach of contract.  See id.

In reaching a contrary conclusion, the trial court relied upon the following provision in the Terms of Use:

> You agree that we won't be responsible . . . for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to [the Terms of Use], even if we know they are possible.  This includes when we delete your content, information, or account.

The trial court ruled that this provision precluded Teatotaller's breach of contract action.  In so ruling, the trial court erred.

We review a trial court's interpretation of a contract de novo.  Id.  When interpreting a written agreement, we give the language used by the parties to the agreement its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole.  Id.  We give an agreement the meaning intended by the parties when

4

they wrote it.  Id.  Absent ambiguity, we determine the parties' intent from the plain meaning of the language used in the contract.  Id.

The very next sentence of the provision upon which the trial court relied provides: "Our aggregate liability arising out of or relating to these Terms will not exceed the greater of $100 or the amount you have paid us in the past twelve months."  Reading the provision as a whole, we conclude that it does not preclude Teatotaller's action.  Rather, the last sentence of the provision constitutes an agreement by the parties that Facebook's "aggregate liability arising out of or relating to" the terms of the agreement would "not exceed the greater of $100 or the amount [Teatotaller has] paid [Facebook] in the past twelve months."  Because the parties have not yet litigated the issue, we express no opinion as to whether this provision is enforceable.

We next consider whether Facebook is entitled to immunity under the CDA for Teatotaller's breach of contract claim.  Generally speaking, immunity under the CDA is considered to be an affirmative defense.  See Klayman v. Zuckerberg, 753 F.3d 1354, 1357 (D.C. Cir. 2014).  As such, it may support a motion to dismiss only if the CDA's "barrier to suit is evident from the face of the . . . complaint."  Force v. Facebook, Inc., 934 F.3d 53, 63 n.15 (2d Cir. 2019) (quotation omitted), cert. denied, No. 19-859, 2020 WL 2515485 (U.S. May 18, 2020); see Marshall's Locksmith Service Inc. v. Google, LLC, 925 F.3d 1263 (D.C. Cir. 2019) (affirming dismissal of claims at pleading stage based on CDA immunity); see also National Ass'n of the Deaf v. Harvard University, 377 F. Supp. 3d 49, 68 (D. Mass. 2019) (observing that "[a] plaintiff is not required to anticipate and plead around affirmative defenses raised by a defendant" (quotation and brackets omitted)).  Here, because we conclude that the CDA's barrier to Teatotaller's breach of contract claim is not evident from the face of the complaint, we hold that dismissal on this ground was improper.  See Pirozzi v. Apple, Inc., 913 F. Supp. 2d 840, 849 (N.D. Cal. 2012).  To the extent that the parties argue the merits of Teatotaller's breach of contract claim, they do so prematurely, and we decline to address those arguments.

Determining whether the CDA entitles Facebook to immunity for Teatotaller's breach of contract claim requires that we engage in statutory interpretation.  We review the trial court's statutory interpretation de novo.  See Petition of Estate of Braiterman, 169 N.H. 217, 221 (2016).  We interpret federal statutes and regulations "in accordance with federal policy and precedent."  Id. (quotation omitted).  "When interpreting statutes and regulations, we begin with the statutory or regulatory language, and, if possible, construe that language according to its plain and ordinary meaning."  Id.

Section 230 of the CDA provides "broad immunity to entities . . . that facilitate the speech of others on the Internet."  Universal Communication v. Lycos, Inc., 478 F.3d 413, 415 (1st Cir. 2007); see 47 U.S.C. § 230(c) (2012).

"Congress enacted this statute partially in response to court cases that held internet publishers liable for defamatory statements posted by third parties on message boards maintained by the publishers."  Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 18 (1st Cir. 2016), superseded on other grounds by statute as stated in Stokinger v. Armslist, Docket Number:1884CV03236F, 2020 WL 2617168, at *5 (Mass. Super. Ct. Apr. 28, 2020).  "Section 230(c) limits this sort of liability in two ways."  Id.  First, under section 230(c)(1), "it shields website operators from being 'treated as the publisher or speaker' of material posted by users of the site."  Id. (quoting 47 U.S.C. § 230(c)(1)).  "Relatedly, [under section 230(c)(2),] it allows website operators to engage in blocking and screening of third-party content, free from liability for such good-faith efforts."  Id.; see 47 U.S.C. § 230(c)(2).  "There has been near-universal agreement that section 230 should not be construed grudgingly," but rather should be given "broad construction."  Backpage.com, 817 F.3d at 18-19 (citing cases).

Section 230(c), states in full:

(c) Protection for "Good Samaritan" blocking and screening of offensive material

(1) Treatment of publisher or speaker
    No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability
    No provider or user of an interactive computer service shall be held liable on account of—

        (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

        (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

(Bolding omitted.)

Facebook "relies exclusively" on section 230(c)(1), "which bars courts from treating certain internet service providers as publishers or speakers."  Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100 (9th Cir. 2009).  Section 230(c)(1), "which after all is captioned 'Treatment of publisher or speaker,' precludes

6

liability only by means of a definition." Id. (quoting 47 U.S.C. § 230(c)(1)).  It provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Section 230(e)(3) "makes explicit the relevance of this definition, for it cautions that '[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.'"  Barnes, 570 F.3d at 1100 (quoting 47 U.S.C. § 230(e)(3) (2012)).

Thus, reading these two subsections together, as to state law claims, "subsection (c)(1) only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider."  Id. at 1100-01 (footnote omitted); see Lycos, Inc., 478 F.3d at 418 (construing subsections (c)(1) and (e)(3), and setting forth the same three-factor test).

"To satisfy the first prong of the Section 230's immunity test, the defendant must be an 'interactive computer service.'"  Federal Agency of News LLC v. Facebook, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) (quoting 47 U.S.C. § 230(c)(1)).  An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."  47 U.S.C. § 230(f)(2) (2012) (quotation omitted).  "Facebook is unquestionably an interactive computer service . . . ."  Federal Agency of News LLC, 432 F. Supp. 3d at 1117.  In its brief, Teatotaller states that it "does not dispute that [Facebook] is an 'interactive computer service.'"  Thus, as the plaintiff concedes, the first prong of the test articulated above is met.

To satisfy the third prong of the test, the information at issue must be provided by "an information content provider" other than Facebook.  See id.; Federal Agency of News LLC v. Facebook, Inc., 395 F. Supp. 3d 1295, 1305 (N.D. Cal. 2019); see also F.T.C. v. Leadclick Media, LLC, 838 F.3d 158, 174 (2d Cir. 2016) (the third prong of the immunity test "applies only if the interactive service provider is not also an 'information content provider' of the content which gives rise to the underlying claim").  The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any interactive computer service."  47 U.S.C. § 230(f)(3) (2012) (quotation omitted).  For the purposes of this appeal, we assume that this prong is met as well.  See Federal Agency of News LLC, 395 F. Supp. 3d at 1306 (holding that the third prong was met where the complaint alleged that the plaintiffs' Facebook "account, posts, and content were created and disseminated by [one of the plaintiffs], not Facebook"); see also Fyk v. Facebook, Inc., No. 19-16232, 2020 WL 3124258, at *2 (9th Cir. June 12,

2020) (unpublished) (explaining that "[t]he reference to 'another information content provider' in § 230(c)(1) distinguishes the circumstances in which the interactive computer service itself meets the definition of 'information content provider' with respect to the information in question" and that "[a]s to Facebook, [the plaintiff] is 'another information content provider'" (quotation and brackets omitted)).

The second prong of the test requires that Teatotaller seek to hold Facebook "liable as a publisher or speaker." Federal Agency of News LLC, 395 F. Supp. 3d at 1306. "The prototypical cause of action seeking to treat an interactive computer service provider as a publisher or speaker is defamation." Fields v. Twitter, Inc., 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016), aff'd on other grounds, 881 F.3d 739 (9th Cir. 2018). However, "the language of the statute does not limit its application to defamation cases." Barnes, 570 F.3d at 1101. "Thus, courts have invoked the prophylaxis of section 230(c)(1) in connection with a wide variety of causes of action, including housing discrimination, negligence, and securities fraud and cyberstalking." Backpage.com, 817 F.3d at 19 (citations omitted).

"To determine whether a plaintiff's theory of liability treats a defendant as a publisher, what matters is not the name of the cause of action," but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." Sikhs for Justice "SFJ", Inc. v. Facebook, Inc., 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) (quotations omitted), aff'd, 697 F. App'x 526 (9th Cir. 2017); see Force, 934 F.3d at 64 n.18. "Consequently, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker. If it does, section 230(c)(1) precludes liability." Sikhs for Justice, 144 F. Supp. 3d at 1094 (quotations omitted).

"Publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." Id. (quotation and brackets omitted); see Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."). "Thus, a publisher . . . decides whether to publish material submitted for publication." Sikhs for Justice, 144 F. Supp. 3d at 1094 (quotation omitted). "[I]t is immaterial whether this decision comes in the form of deciding what to publish in the first place or what to remove among the published material." Barnes, 570 F.3d at 1102 n.8. "In other words, any activity that can be boiled down to deciding whether to exclude material that [a party other than the defendant] seek[s] to post online is perforce immune under section 230." Sikhs for Justice, 144 F. Supp. 3d at 1094 (quotation omitted).

8

"In keeping with this expansive view of the publisher's role, judicial decisions in the area consistently stress that decisions as to whether existing content should be removed from a website fall within the editorial prerogative." Cohen v. Facebook, Inc., 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017), aff'd in part sub nom., Force, 934 F.3d 53, cert. denied, No. 19-859, 2020 WL 2515485 (U.S. May 18, 2020); see Barnes, 570 F.3d at 1103 ("[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove."); Green v. America Online (AOL), 318 F.3d 465, 471 (3d Cir. 2003) ("[D]ecisions relating to the monitoring, screening, and deletion of content from [a defendant's] network . . . quintessentially relate[ ] to a publisher's role."); Federal Agency of News LLC, 395 F. Supp. 3d at 1306-07 (dismissing with prejudice the plaintiffs' claims under section 230(c)(1) because they were "based on Facebook's decision not to publish [one plaintiff's] content"); Dipp-Paz v. Facebook, 18-CV-9037 (LLS), 2019 WL 3205842, at *3 (S.D.N.Y. July 12, 2019) (dismissing with prejudice the plaintiff's claim that Facebook "violated his rights to free speech by blocking his Facebook account" because the actions "to which Plaintiff objects fall squarely within the CDA's exclusion from liability"); Ebeid v. Facebook, Inc., Case No. 18-cv-07030-PJH, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) (deciding that Facebook's "decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct"); Fields, 217 F. Supp. 3d at 1123 ("[P]roviding [Twitter] accounts to ISIS is publishing activity, just like monitoring, reviewing, and editing content.").

To the extent that Teatotaller's claim is premised upon Facebook's decision to remove its "Instagram account, including all the content, data, and followers that had been accumulated through paid and unpaid activity," its claim may require the court to treat Facebook as a publisher. See Federal Agency of News LLC, Inc., 432 F. Supp. 3d at 1119-20 (holding that Facebook was entitled to immunity under section 230(c)(1) for the plaintiffs' breach of contract claim, which alleged that Facebook breached its "Terms of Service" by removing their Facebook account, posts, and content, without legitimate reason, and dismissing that claim with prejudice).

However, to the extent that Teatotaller's claim is based upon specific promises that Facebook made in its Terms of Use, Teatotaller's claim may not require the court to treat Facebook as a publisher. See Barnes, 570 F.3d at 1107, 1109 (concluding that the defendant website was not entitled to immunity under the CDA for the plaintiff's breach of contract claim under a theory of promissory estoppel because "the duty the defendant allegedly violated springs from a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant"); Hiam v. Homeaway.com, Inc., 267 F. Supp. 3d 338, 346 (D. Mass. 2017) (determining that "the Plaintiffs are able to circumvent the CDA" as to certain claims by asserting that "through [the defendant's] policies, [the defendant] promises (1) a reasonable

9

investigatory process into complaints of fraud and (2) that the website undertakes some measure of verification for each posting"), <u>aff'd on other grounds</u>, 887 F.3d 542 (1st Cir. 2018).

Thus, because it is not clear on the face of Teatotaller's complaint and objection whether prong two of the CDA immunity test is met, we conclude that the trial court erred by dismissing Teatotaller's breach of contract claim on such grounds.  <u>See</u> <u>Pirozzi</u>, 913 F. Supp. 2d at 849.  We simply cannot determine based upon the pleadings at this stage in the proceeding whether Facebook is immune from liability under section 230(c)(1) of the CDA on Teatotaller's breach of contract claim.  <u>See</u> <u>id</u>.  For all of the above reasons, therefore, although Teatotaller's breach of contract claim may ultimately fail, either on the merits or under the CDA, we hold that dismissal of the claim is not warranted at this time.

<u>Reversed and remanded</u>.

HICKS, BASSETT, and DONOVAN, JJ., concurred.